## CITY COUNCIL OF AUGUSTA *v.* LOMBARD, administrator, and *vice versa.*

1. If a structure is not necessarily and of itself a permanent and continuing nuisance, but only becomes such in consequence of some supervening cause which produces special injury at different periods, a separate action lies for each injury thus occasioned, and the statute of limitations begins to run against such cause of action only from the time of its accrual.
2. Where a defendant at the appearance term filed a general demurrer to a declaration, he could not at the second term amend such general demurrer by adding thereto grounds of special demurrer; and the filing of the special demurrer after the time allowed by law is a good reason why the court should overrule and disallow it.

Argued June 14, — Decided July 10, 1897.

Action for damages. Before Judge Callaway. Richmond superior court. October term, 1896.

To the petition of Charles F. Lombard the City Council of Augusta demurred generally at the appearance term. At a subsequent term the demurrer came on to be heard, and the defendant offered to amend its demurrer by demurring specially on grounds hereafter set out. The court overruled both demurrers, and the defendant excepted.

The petition was filed December 2, 1892, and alleged: On March 10, 1891, the plaintiff was, and he still is, the lessee of property in Augusta, on the east side of Kollock street, immediately south of the third level of the Augusta canal, and known as the "Pendleton Foundry & Machine Works," on which property he was carrying on a foundry business. The machinery of the foundry was run by water received from a headrace from the second level of the canal, for which he pays the defendant a large rental. At the time of the building or cutting of the headrace, strong and substantial brick abutments with water-gates were put in immediately at the point where the headrace leaves the second level of the canal, and the main object in constructing the water-gates was to regulate

and control the flow or volume of water passing through the headrace during periods of very high water in the Savannah river and consequent high water in the second level of the canal. Early in the spring of 1887, the defendant had the water-gates taken out of the headrace, notwithstanding the objections of the plaintiff, who earnestly protested at the time, and notified the officers and agents superintending the removal of the gates that the effect thereof would be to seriously damage him at times of high water. In consequence of said removal, on Monday and Tuesday, March 9 and 10, 1891, when the Savannah river had reached a height of some 35 feet, large and small quantities of water flowed from the second level of the canal through the headrace, and in such volume as to run over the bank or dam of said headrace, which was lower by two feet or more than the dam of the second level of the canal, and by which 80 feet or more of the dam or bank of the headrace opposite his foundry premises was washed away and large quantities of water precipitated in and upon his foundry and foundry-yard, washing, carrying away and destroying his coke, coke-boxes, coke-ovens, flasks, foundry-facings, coal, and numerous other and valuable property, and entailing a large outlay of money in cleaning up and putting his said premises in condition to work the foundry (all of which is more fully set out in a bill of particulars annexed to the petition), to his damage $3,000. Said loss and damage were caused by the negligent, careless and intentional removal by the defendant of the said water-gates, which had been constructed mainly for the purpose of guarding against the character of injuries complained of herein; and but for their removal the damage would not have been done him. Defendant is the owner and has the sole control, supervision and management of the canal and its headraces, including said headrace.

The special grounds of demurrer were : (1) The allegation in the bill of particulars attached to the petition: "Flasks lost, $650.00," is too indefinite, because it should state particularly the number of flasks, the sizes and classification. Also the allegation: "Core-oven and sand-house washed away, $287.30."

He should have alleged the size of the core-oven and sandhouse. (2) The allegation: "Labor, cleaning up, and getting ready for work $412.30," is too indefinite. He should have stated the number of laborers and days of labor paid for, so that the defendant would be enabled to meet such evidence as might be introduced to sustain the allegation. (3) The cause of action is barred by the statute of limitations in this: The tort complained of, to wit the removal of the gates in the second level of the canal, occurred in the early part of the spring of 1887, and the suit was not filed until December 7, 1892.

*W. T. Davidson* and *M. P. Carroll*, for the City Council.
*Black & Verdery*, contra.

SIMMONS, C. J. Lombard sued the City Council of Augusta for damages, and the defendant demurred generally. This demurrer was overruled, and the defendant excepted.

In the case of *City Council of Augusta v. Lombard* 93 *Ga.* 284, this court held that, under a state of facts such as is alleged in the petition in the present case, the plaintiff had a right to recover. Under the principles there announced, the court did not err in ruling that the petition now under consideration set out a cause of action. There is another question here to be considered which was not involved in that case, viz., as to whether the cause of action was barred by the statute of limitations, the petition showing on its face that the alleged wrongful removal of the water-gates occurred more than four years before the filing of the suit, but that the special injury complained of occurred within less than that time. Our code provides, that all actions for trespass upon or damage to realty, or injuries to personalty, shall be brought within four years after the right of action accrues. Civil Code, §§ 3898, 3899. It therefore becomes necessary to determine whether Lombard's right of action accrued when the water-gates were removed, or only from the time when the special damage complained of was suffered.

The doctrine of the application of the statute of limitations to actions for nuisance is discussed, with little disagreement,

in quite a number of text-books and decisions. A nuisance, permanent and continuing in its character, the destruction or damage being at once complete upon the completion of the act by which the nuisance is created, gives but one right of action, which accrues immediately upon the creation of the nuisance and against which the statute of limitations begins, from that time, to run. Troy v. Cheshire R. R. Co., 23 N. H. 83, s. c. 55 Am. Dec. 177; Chicago & E. Ill. R. R. Co. v. Mc-Auley, 121 Ill. 160; Stodghill v. Chicago etc. R. R. Co., 53 Iowa, 341.

Where a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie. 3 Bl. Com. 220. This action accrues at the time of such continuance, and against it the statute of limitations runs only from the time of such accrual.

"Where the original nuisance to land is of a permanent character, so that the damages inflicted thereby are permanent, a recovery not only may, but must, be had for the entire damages, in one action; and such damages accrue from the time the nuisance is created, and from that time the statute of limitations begins to run. In the case of nuisances which are transient rather than permanent in their character, the continuance of the injurious acts is considered a new nuisance, for which a fresh action will lie; and although the original cause of action is barred, damages may be recovered for the continuance of the nuisance." Chicago etc. R. R. Co. v. Mc-Auley, supra.

"Where one creates a nuisance and permits it to remain, it is treated as a continuing wrong and giving rise, over and over again, to causes of action. But the principle upon which one is charged as a continuing wrong-doer is, that he has a legal right, and is under a legal duty, to terminate the cause of the injury." Kansas Pac. Ry. Co. v. Mihlman, 17 Kans. 231; Bonner v. Welborn, 7 Ga. 296; Phinizy v. City Council of Augusta, 47 Ga. 260; Reid v. City of Atlanta, 75 Ga. 110; Inhabitants of New Salem v. Eagle Mill Co., 138 Mass. 8; Col-

rick *v.* Swinburne, 105 New York 503; Fell *v.* Bennett, 110 Penn. St. 181; Stadler *v.* Grieben, 61 Wis. 500.

Some of the authorities seem to hold, that in cases of this kind recovery may be defeated by the acquisition, by the person maintaining the nuisance, of a prescriptive right to do so to a degree not less than that of the principal act complained of. 2 Wood on Nuisances, § 865, 1 Wood on Limitations, 180, and cases cited. But see *Bonner* v. *Welborn*, supra, p. 327, where Judge Lumpkin says, "a person never can, by prescription or otherwise, acquire a right to maintain a nuisance."

Where the structure, though permanent in its character, is not necessarily and of itself a permanent and continuing nuisance, but only becomes such in consequence of some supervening cause which produces special injury at different periods, a separate action lies for each injury thus occasioned, and the statute begins to run against such cause of action only from the time of its accrual,—from the time when the special injury is occasioned. So this court has held that recovery might be had for injuries resulting from the erection and maintenance of a dam, in so far as such injuries occurred within four years preceding the bringing of the action, although the dam may have remained unchanged for twenty years. *Athens Mfg. Co.* v. *Rucker*, 80 *Ga.* 291.

"Whenever the nuisance is of a permanent character and its construction and continuance are necessarily an injury, the damage is original, and may be at once fully compensated. In such case, the statute of limitations begins to run upon the construction of the nuisance. But when such structure is permanent in its character, and its construction and continuance are not necessarily injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened; and there may be as many successive recoveries as there are successive injuries. In such case, the statute of limitations begins to run from the happening of the injury complained of." St. Louis, I. M. & S. Ry. *v.* Biggs, 52 Ark. 240; s. c. 20 Am. St. Rep. 174.

In Indiana the rule has been expressed as follows: "Statute of limitations does not begin to run against a cause of action

for injury through defendant's negligence until the injury is received, although the negligence was committed thirteen years prior thereto." Board of Com'rs Wabash County v. Pearson, 120 Ind. 426, s. c. 16 Am. St. Rep. 325. See also Roberts v. Read, 16 East, 215; Polly v. McCall, 37 Ala. 20; McConnell v. Kibbe, 29 Ill. 483; Ohio & Miss. Ry. Co. v. Wachter, 123 Ill. 440; Miller v. Keokuk & DesMoines Ry. Co., 43 Iowa, 680; Sullens v. Chi., Rock I. &. Pac. Ry. Co., 74 Iowa, 659, s. c. 7 Am. St. Rep. 501; Harbach v. Ry. Co., 80 Iowa, 593; Hardesty v. Ball, 43 Kansas, 151; Culver v. Chi. etc. Ry. Co., 38 Mo. 130; Heath v. T. & P. Ry. Co., 37 La. Ann. 728; Valley Ry. Co. v. Franz, 43 Ohio St. 623; L. &. N. R. R. Co. v. Hays, 11 Tenn. 382, s. c. 14 Am. & Eng. R. R. Cases, 284; 1 Wood on Limitations, §§ 180, 181; 2 Wood on Nuisances, §§ 865, 869; Angell on Limitations, § 300; 2 Greenleaf on Evidence, § 433.

It appears in the present case that the city municipal corporation, under a charter power, engaged in the business of furnishing to manufacturing concerns water for use in the conduct of their enterprises, and for that purpose constructed a system of canals, from which races led to the manufacturing establishments, and erected water-gates to control the flow of the water in the races. Afterward, over plaintiff's objection, they removed the gate to the race which supplied plaintiff's foundry, and it was in consequence of this removal of the gates that the injury is alleged to have occurred. This removal did not per se constitute a nuisance, but became such in certain times of high water by discharging large and unusual quantities of water upon the premises of the plaintiff, thereby injuring him. For injuries so received, the plaintiff may, as against the municipal corporation, maintain an action, and for each successive inundation a new cause of action may accrue. The statute of limitations begins to run against such cause of action only from the time of its accrual, and recovery may be had upon it even though the negligent act by which it was occasioned may have been done more than four years before suit was brought. The statute of limitations running only from the time of the accrual of the cause of action, and a new cause of action accruing whenever

damage is occasioned, it is only necessary that suit be brought within four years after the happening of the special injury of which complaint is made and for which recovery is sought. The petition setting out a cause of action and the latter being not barred by the statute of limitations, the court did not err in overruling the general demurrer of the defendant.

2. The general demurrer of defendant was filed at the appearance term. At a subsequent term defendant offered to amend its demurrer by adding grounds of special demurrer. The court overruled the special demurrer, on the ground that it was not offered at the appearance term. We think that the defendant could not amend his general demurrer, at the second term, by adding thereto grounds of special demurrer; and the filing of the special demurrer after the time allowed by law, is a good reason why the court should overrule and disallow it. *R. & D. R. R. Co.* v. *Mitchell*, 95 *Ga.* 78.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. All the Justices concurring.*