S08G1417, S08G1424. CITY OF ATLANTA et al. v. KLEBER et al.
(two cases).
(677 SE2d 134)

MELTON, Justice.

These consolidated cases concern a nuisance[1] and negligence action brought by Scott Kleber and Nancy Habif (collectively referred to as "the homeowners") against Norfolk Southern Corporation and the City of Atlanta. In this action, the homeowners contended that Norfolk and the City had failed to properly maintain a drainage pipe and culvert near their property, resulting in their home being flooded during heavy rains. In *Kleber v. City of Atlanta*,

---

[1] A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man.
OCGA § 41-1-1.

291 Ga. App. 146 (661 SE2d 195) (2008), the Court of Appeals reversed the trial court's grant of summary judgment to Norfolk and the City, finding, among other things, that the nuisance about which the homeowners complained was continuing in nature and, as a result, the homeowners' suit was not barred by the four-year statute of limitations. See OCGA § 9-3-30. We granted certiorari to consider two issues: (1) whether the Court of Appeals erred in concluding that the homeowners presented triable issues with respect to their negligence and nuisance claims against Norfolk and (2) whether the Court of Appeals erred in concluding that the homeowners presented a triable issue with respect to their nuisance claim against the City. For the reasons set forth below, we reverse.

The record shows that, in the late 1800s, Norfolk installed railroad tracks abutting property that would eventually be owned by the homeowners almost two centuries later. At some point, at least four decades ago, Norfolk also installed a culvert and a 36-inch brick drainage pipe under the tracks. At that time, the drainage culvert and pipe were adequate to drain the large 37-acre basin in which the homeowners' property sits. The pipe and culvert have been maintained properly over the years, as the evidence shows that they are currently clean of debris, intact, and in proper working order.

The homeowners purchased and moved into their home during the summer of 1997. During heavy rains, the homeowners experienced flooding on the property and, several months after moving in, they relayed their problem to both Norfolk and the City, the latter of which had placed a connecting pipe onto Norfolk's pipe that directed runoff to a combined sewer overflow culvert.[2] Approximately six years later, on May 16, 2003, the homeowners incurred substantial property damage from the flooding of their home following a particularly heavy rain. The homeowners again contacted Norfolk and the City, but their request that Norfolk and the City fix the flooding problem was not granted. In response, the homeowners filed this action on October 28, 2004, contending that: (1) Norfolk was liable for negligence and nuisance because the drainage pipe was too small to properly handle runoff and (2) the City was liable for nuisance for failing to adequately construct and maintain the storm and drainage system in the surrounding properties, including its connection to Norfolk's pipe.[3]

---

[2] The Norfolk pipe is connected to an additional pipe that leads to the City's Clear Creek combined sewer overflow culvert (CC-CSO). Prior to the construction of the CC-CSO, Norfolk's pipe emptied into Clear Creek.

[3] Although the section of land involved in this litigation was sold to a developer in December 2004 as a part of the "Belt Line" project, Norfolk's subsidiary retained ownership of the railroad tracks, the roadbed, and all associated railroad appurtenances.

With regard to the operative facts underlying the case, the parties agreed to be bound by the findings of a court-appointed special master. Among other things, the special master determined that the homeowners' property was prone to flooding because Norfolk's "36-inch pipe that ultimately drains the basin, in which the residence is located, is not large enough to empty that basin without creating a backup or ponding of storm water in the basin." The special master noted, however, that the 36-inch pipe had been maintained properly over the years and that, at the time that it was installed, "this pipe was probably sized to accommodate the flow from the drainage basin as it existed many decades ago." He further noted that, at the time that the drainage pipe was installed, the standard practice called for much smaller pipes than those installed today. In a subsequent deposition regarding his report, the special master explained this observation, stating that it was correct to presume that "[w]hen the pipe was originally constructed or installed, it dealt with the conditions that existed at the time[.] . . . The design for the pipe when it was done at that time was based on the conditions that existed at that time." The special master further determined that the City's connection to Norfolk's drainage pipe did not increase the backup of water onto the homeowners' land. Finally, the special master found that, over the decades since the drainage pipe had been installed, development of the surrounding property, which included the installation of areas impervious to water absorption, had increased the runoff flowing into the basin where the homeowners' property rests. At his deposition regarding his report, the special master was asked: "Did your investigation reveal anything that Norfolk Southern and the City of Atlanta or, frankly, any of the other property owners in the area had done that increased the flow of surface water onto the Kleber residence?" In response, the special master indicated that he believed that the increase was due to the development of other properties, not actions by Norfolk or the City. He opined: "Over the years there have been increases to house sizes, you know, maybe driveways added, patios, whatever, you know, creating a more impervious area, thereby generating more runoff into the basin."

1. As an initial matter, we cannot fully agree with the Court of Appeals' determination that the type of nuisance in issue in this case is wholly continuing in nature. In making this determination, we must look both to our case law and the Restatement of Torts.[4]

---

[4] We have previously held:
The Restatement's approach to dealing with continuing nuisances is both comprehensive and workable, and although it appears never to have been adopted by any

The classification of an alleged nuisance as continuing in nature directly controls the manner in which the statute of limitations will be applied to the underlying claim.

> A nuisance, permanent and continuing in its character, the destruction or damage being at once complete upon the completion of the act by which the nuisance is created, gives but one right of action, which accrues immediately upon the creation of the nuisance, and against which the statute of limitations begins, from that time, to run. Where a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie. This action accrues at the time of such continuance, and against it the statute of limitations runs only from the time of such accrual.

(Citations omitted.) *City Council of Augusta v. Lombard*, 101 Ga. 724, 727 (28 SE 994) (1897).

In *City Council of Augusta v. Boyd*, 70 Ga. App. 686 (29 SE2d 437) (1944), the plaintiffs filed a nuisance action against the City Council for damages caused by the City of Augusta's improper maintenance of an open sewer drainage ditch adjacent to their property. In characterizing the nuisance as a continuing one, the Court of Appeals held:

> The nuisance complained of in the instant case, the improper maintenance of the ditch, is not a permanent one, but rather one which can be abated by the city at any time, and the wrong or injury is remediable. The nuisance complained of does not consist in the mere presence of the ditch, but in the manner in which it is maintained.

Id. at 688.

In this case, the homeowners appear to complain both about the mere presence of the culvert and pipe, arguing that they were improperly installed, as well as their maintenance over time. To the extent that the homeowners complain that the *mere presence* creates a nuisance due to improper installation, their nuisance claim is permanent in nature and is presently barred by the statute of

---

decision in this jurisdiction, a review of our cases reveals that its application would have produced the same results. The Restatement approach appears to be the general rule and we adopt it.
(Citation omitted.) *Cox v. Cambridge Square Towne Houses*, 239 Ga. 127, 128-129 (236 SE2d 73) (1977).

limitations. See *Lombard*, supra, 101 Ga. at 727. In any event, the special master opined that the culvert and pipe were properly installed decades ago, and, at the time of installation, the structures adequately drained the homeowners' property. On the other hand, to the extent that the homeowners contend that the culvert and drainage pipe have not been properly *maintained*, their nuisance claim is continuing in nature. They are, therefore, allowed to contend that Norfolk's maintenance of the culvert and pipe within the four years preceding their lawsuit created a nuisance.

The Restatement of Torts (Second) § 930 supports these classifications. There, in comment c, it states:

> Damage to neighboring landowners is frequently incident to the construction and operation of establishments employed in necessary public service, which nominally have the right of taking land by eminent domain. *A railway embankment with an inadequate culvert diverts water upon nearby land*; a municipal electric plant sends smoke and fumes into homes and factories; a city sewage disposal system pollutes a stream to the injury of bordering landowners. *If the damage results from some minor feature of construction or management, so that it could be averted at slight expense, the normal remedy of successive actions for past invasions or relief by injunction would alone be available, as is also true if the harm results from an improper and unnecessary method of operation. But if the invasions are caused by some substantial and relatively enduring feature of the plan of construction or from an essential method of operation, then it will usually not be abatable* by injunction and the desirability of granting the injured person complete compensation for past and future invasions is apparent.

(Emphasis supplied.)

2. Contrary to the holding of the Court of Appeals, the homeowners failed to present triable issues with respect to their negligence and nuisance claims against Norfolk. With regard to their negligence claim, the homeowners have failed to show that Norfolk has breached any duty owed to them based on the facts of this case. To the contrary, in accordance with the special master's report, it must be presumed that the culvert and drainage ditch installed by Norfolk decades ago properly drained water from the property at the time that they were installed, and Norfolk has properly maintained

them.[5] Therefore, there is no evidence in the record that Norfolk negligently built or maintained the culvert or drainage pipe, and there is also no evidence that Norfolk has taken any subsequent action to increase the flow of water onto the homeowners' property. Changes in the topography of the surrounding neighborhood not caused by Norfolk did not create any new duty to change the parameters of the properly-installed drainage ditch and pipe. Likewise, with regard to their nuisance claim, the homeowners have failed to show that Norfolk created a nuisance either from the improper installation of its culvert and drainage pipe or from their improper maintenance of that culvert drainage pipe. With regard to the installation of the pipe and culvert, as discussed above, the homeowners' nuisance claim is permanent in nature, and it is barred by the statute of limitations. Moreover, the special master in this case specifically found that the culvert and pipe should be presumed to have been designed to handle the runoff flowing into the basin at the time of their installation. The homeowners have presented no evidence to counter this presumption of any kind. Therefore, it cannot be said that Norfolk's construction of the pipe and culvert created a nuisance. To the contrary, it appears that Norfolk's actions may benefit the adjoining property, as the culvert and pipe, as acknowledged by the special master, allow for drainage which may not otherwise occur. Likewise, Norfolk's maintenance of the pipe has not created a subsequent nuisance. The special master found that the pipe had been kept in good working order and free of clogs and debris. There is no indication that Norfolk has taken any action which would limit the flow of water through the drainage pipe. The pipe, therefore, has been properly maintained.

3. The homeowners also failed to present a triable issue with respect to their nuisance claim against the City. The homeowners raise several contentions against the City. First, they contend that the City's construction of the CC-CSO and connection to the Norfolk drainage pipe contributed to the flooding. The special master's findings indicate, however, that the connection of the pipe has not contributed to the flooding, and that the City has properly constructed and maintained the CC-CSO.

The homeowners further contend that the City created a nuisance by approving construction permits for surrounding land and maintaining a series of underground pipes which ultimately feed into Norfolk's culvert and pipe. As a result of this new construction, including areas impervious to water, the homeowners contend that

---

[5] This fact remains true even if Norfolk also created an embankment on which to construct its tracks.

runoff increased and contributed to the flooding. This contention does not raise a triable claim under the facts of this case.

> [T]he sole act of approving a construction project which leads to an increase in surface water runoff cannot impose liability for creating or maintaining a nuisance. However, where a municipality negligently constructs or undertakes to maintain a sewer or drainage system which causes the repeated flooding of property, a continuing, abatable nuisance is established, for which the municipality is liable.

(Citations and emphasis omitted.) *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996).

The special master found that the homeowners' land floods because the 36-inch pipe installed by the railroad cannot handle the quantity of runoff flowing toward it during heavy storms. The facts show that the City has taken no steps to maintain the culvert, the drainage pipe, or any other pipes leading to the culvert. "[L]iability of a municipality cannot arise solely from its approval of construction projects." (Emphasis omitted.) *Fulton County v. Wheaton*, 252 Ga. 49, 50 (1) (310 SE2d 910) (1984), overruled in part on other grounds, *DeKalb County v. Orwig*, 261 Ga. 137 (1) (402 SE2d 513) (1991). To the contrary, in order to become responsible, a municipality must actively take control over the property in question or accept a dedication of that property. See *Merlino v. City of Atlanta*, 283 Ga. 186 (2) (657 SE2d 859) (2008). The homeowners have failed to show that the City has done so in this case. Therefore, contrary to the homeowners' claims, the City did not become responsible for maintaining the railroad culvert simply because it approved plans for constructing homes in the surrounding neighborhood.[6]

*Judgments reversed. All the Justices concur, except Sears, C. J., and Hunstein, P. J., who dissent.*

HUNSTEIN, Presiding Justice, dissenting.

The plaintiff homeowners' nuisance claim against Defendant Norfolk Southern Corporation is not barred by the statute of

---

[6] In *City of Bowman v. Gunnells*, 243 Ga. 809, 811 (2) (256 SE2d 782) (1979), this Court established

> guidelines for determining whether a municipality will be liable for creating or maintaining a nuisance: the defect or degree of misfeasance must exceed mere negligence (as distinguished from a single act); the act complained of must be of some duration and the maintenance of the act or defect must be continuous or regularly repetitious; and there must be a failure of municipal action within a reasonable time after knowledge of the defect or dangerous condition.

(Footnote omitted.) *Hibbs*, supra, 267 Ga. at 337.

limitations. As the majority correctly states, the classification of an alleged nuisance as permanent or continuing in nature directly controls the manner in which the applicable four-year statute of limitations is applied. However, the majority incorrectly classifies the intermittent flooding on the homeowners' property that allegedly was caused by the presence of the Defendant's drainage pipe as a permanent nuisance. In reaching this conclusion, the majority asserts that to the extent the homeowners complain that the mere presence of the culvert and pipe creates a nuisance, the nuisance claim is permanent, but to the extent that they claim the drainage pipe was not properly maintained, their nuisance claim is continuing in nature. Thus, the majority reasons that the only claims by the homeowners that are not barred by the statute of limitations are those alleging that Norfolk did not keep the pipe in good working order. However, there are certainly instances in which the creation of a permanent object that causes harm or damages to others can be considered a continuing nuisance. For example, in facts similar to the ones presented here, this Court in *Cox v. Cambridge Square Towne Houses*, 239 Ga. 127 (236 SE2d 73) (1997) held that a storm sewer constituted a continuing nuisance because it caused damage to the plaintiff's property every time it rained and would continue to do so.[7] Id. at 128. This Court held that even though the storm drain was built more than four years prior to the plaintiff's complaint, the plaintiff still had the right to sue for all damages that occurred in the last four years. Id.

Contrary to the majority's contention, whether a nuisance is continuing or permanent is not dependent on whether the plaintiff complains about the "presence" of the drainage pipe or asserts that the pipe is improperly maintained. Rather, this Court has traditionally looked at whether a nuisance is transient and abatable to determine whether an alleged nuisance is continuing or permanent. This Court in *Shaheen v. G & C Corporation* aptly describes the difference between a permanent and a continuing nuisance:

> "Where the original nuisance to land is of a permanent character, so that the damages inflicted thereby are permanent, a recovery not only may, but must, be had for the entire damages, in one action; and such damages accrue from the time the nuisance is created, and from that time the statute of limitations begins to run. In the case of

---

[7] In *Cox*, this Court recognized the difficulties that courts have had in determining whether a nuisance is permanent or temporary for statute of limitations purposes, and adopted the Restatement approach to classifying continuing nuisances in an effort to alleviate the confusion. 239 Ga. at 128-129.

> nuisances which are transient rather than permanent in their character, the continuance of the injurious acts is considered a new nuisance, for which a fresh action will lie; and although the original cause of action is barred, damages may be recovered for the continuance of the nuisance."

(Citations and punctuation omitted.) 230 Ga. 646, 648 (198 SE2d 853) (1973). This Court in *Shaheen* held that a continuing nuisance was established by evidence that the defendant's grading of its property caused water and dirt to be deposited on the appellant's property every time it rained. Id. Because the nuisance was classified as continuing in nature, this Court rejected the defendant's argument that the grading of its property occurred more than four years prior to the filing of the complaint and was thus barred by the statute of limitations. Id. at 647. Numerous other decisions by this Court and the Court of Appeals of Georgia have likewise recognized that a nuisance should be classified as continuing if it is transient and abatable.[8]

The majority's reliance on *City Council of Augusta v. Lombard* is misplaced. In *Lombard*, this Court stated that a permanent nuisance is one where the destruction or damage is complete upon the completion of the act by which the nuisance is created. *City Council of Augusta v. Lombard*, 101 Ga. 724, 727 (28 SE 994) (1897). However, "[w]here one creates a nuisance, and permits it to remain, it is treated as a continuing wrong and giving rise, over and over again, to causes of action." Id. The defendant in *Lombard* committed a one-time act, the removal of a gate from a canal, more than four years prior to the filing of the suit. Id. at 729. The court held that the suit was not barred by the statute of limitations because

> [t]his removal did not per se constitute a nuisance, but became such in certain times of high water by discharging large and unusual quantities of water upon the premises of the plaintiff, thereby injuring him. For injuries so received, the plaintiff may ... maintain an action, and for each successive inundation a new cause of action may accrue.

---

[8] See, e.g., *City of Columbus v. Myszka*, 246 Ga. 571, 572 (272 SE2d 302) (1980) (distinguishing a continuing, abatable nuisance from a permanent nuisance); *Brand v. Montega Corp.*, 233 Ga. 32, 33 (209 SE2d 581) (1974) ("In a surface-water invasion case, the continuing invasions amount to a continuing trespass which is the equivalent of a continuing nuisance."); *City of Gainesville v. Waters*, 258 Ga. App. 555, 558 (574 SE2d 638) (2002) ("Where a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie."); *City Council of Augusta v. Boyd*, 70 Ga. App. 686, 688 (29 SE2d 437) (1944) (holding that the nuisance is not permanent because it can be abated at any time).

Id. Thus, in this case, the appellant's building of the drainage pipe did not constitute the nuisance, as the nuisances were the subsequent floodings allegedly caused by the drainage pipe. As such, each individual flooding constituted an alleged nuisance for which a new cause of action accrues. See id.

The majority cites the Court of Appeals' decision in *City Council of Augusta v. Boyd*, 70 Ga. App. 686, 688 (29 SE2d 437) (1944), for the proposition that an alleged nuisance should be considered permanent because the homeowners complain of the presence of the drainpipe. However, the Court of Appeals in *Boyd* never held that a complaint of the mere presence of an alleged nuisance equates to that nuisance being classified as a permanent nuisance. Rather, the court said "the improper maintenance of the ditch, is not a permanent [nuisance], but rather one which can be abated by the city at any time . . . ." Id. at 688. That the plaintiff in *Boyd* was complaining about the city's maintenance of a ditch merely demonstrates that this alleged nuisance, the maintenance of the ditch, could be stopped at any time and thus constitutes a continuing nuisance. It does not necessarily follow that a complaint about the mere presence of an alleged nuisance classified that nuisance as permanent, and the court in *Boyd* does not hold as much.[9]

The majority incorrectly classifies the homeowners' nuisance claim against Defendant Norfolk as part permanent in nature and part continuing in nature. Rather, the entire claim should be classified as continuing in nature. It is clear in this case that the alleged nuisance was transient as the flooding was not constant and only occurred during heavy rain. The evidence here also demonstrates that the alleged nuisance was abatable. The Special Master testified as to proposed processes to alleviate the flooding: the construction of an additional drainpipe on Defendant Norfolk's property or the widening of the drainpipe already there. Because the nuisance here should have been classified as a continuing nuisance, the only damages against Defendant Norfolk that are barred by the four-year statute of limitations are those that were incurred by flooding that occurred more than four years prior to the filing of the Plaintiffs' complaint. See *Cox*, 239 Ga. at 128.

In addition to the homeowners' claims against Defendant Norfolk not being barred by the statute of limitations, a genuine issue of material fact exists as to whether Defendant Norfolk's drainage pipe caused the damage to the homeowners' property. The trial court in

---

[9] This Court in *Hibbs v. City of Riverdale*, a case cited by the majority, recognizes that a party can be held liable for a continuing nuisance whether the party *constructs or maintains* the nuisance. 267 Ga. 337, 338 (478 SE2d 121) (1996).

this case relied on the findings of a Special Master. The Special Master concluded that the homeowners' residence floods because the 36-inch pipe that ultimately drains the basin is not large enough to empty that basin without creating a backup of storm water. Contrary to the majority's assertion, the Special Master did not conclude that at the time of the pipe's installation, the structures complied with the prevailing standards and adequately drained the homeowners' property. Rather, the Special Master noted that the date the pipe was built is unknown and old designs for the pipe cannot be located, and that the pipe was *probably* sized to accommodate the flow from the drainage basin as it existed many decades ago.[10] The Special Master also explains that the flooding on the property caused by the drainage pipe has existed for years and is not a recent occurrence.

The Special Master notes that it is *likely* that additional development surrounding the parties would generate more impervious sources, therefore generating additional water runoff through the drainage pipe and culvert. This assertion certainly creates a question as to whether the surrounding development is a superceding cause to the flooding on the homeowners' property that the Special Master concludes is a result of Defendant Norfolk's drainage pipe. However, because the Special Master does not specify how much the surrounding development may have contributed to the water runoff or that it even definitely occurred, this issue of causation is not appropriately decided on a motion for summary judgment. Therefore, I respectfully dissent to Divisions 1 and 2 of the majority's opinion and would affirm the decision of the Court of Appeals.

I am authorized to state that Chief Justice Sears joins in this dissent.

DECIDED MAY 4, 2009 —
RECONSIDERATION DENIED JUNE 1, 2009.

*Elizabeth B. Chandler, Jerry L. DeLoach, Laura Sauriol-Gibris*, for City of Atlanta.

---

[10] Even if the Special Master were to find that the Defendant's drainage pipe did not cause flooding when it was created, this does not necessarily preclude the Plaintiffs' claim. As the Restatement (Second) of Torts § 834 (f) states:

> In some [nuisance] cases the physical condition created is not of itself harmful, but becomes so upon the intervention of some other force – the act of another person or force of nature. In these cases the liability of the person whose activity created the physical condition depends upon the determination that his activity was a substantial factor in causing the harm, and that the intervening force was not a superseding cause.

*Weissman, Nowack, Curry & Wilco, William C. Thompson, Laura S. Morris,* for Norfolk Southern Corporation.

*Gaslowitz Frankel, Craig M. Frankel, Lisa C. Lambert, LeAnne M. Gilbert,* for Kleber et al.