**SECOND DIVISION
BARNES, P. J.,
ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**November 30, 2012**

# In the Court of Appeals of Georgia

A12A1621. COLUMBUS, GEORGIA v. CIELINSKI.                     AD-074

ADAMS, Judge.

Mary Jo Cielinski sued the City of Columbus for nuisance arising from its allegedly inadequate drainage system and failure to properly maintain its drainage system, resulting in repeated flooding of her land and her home. Cielinski also asserted a claim for breach of contract. After the trial court denied the City's motions for summary judgment on both claims, the City sought an interlocutory appeal. We granted the application, and now affirm in part and reverse in part.

Cielinski purchased her house in Columbus, Georgia in 1985. In 1990, Cielinski's house flooded in the middle of the night during a heavy rain. In 1991, the City replaced a storm drainage pipe that ran along Cielinski's side yard. During that process, it was revealed that the Cielinski house encroached on the City's drainage

and utility easement and that a sanitary sewer line was located in that easement, under part of the Cielinski house. The parties entered an agreement to resolve any potential problems relating to the City's right to require that any portion of the Cielinski house be removed from the easement. The agreement provided as follows:

> In consideration of the City's agreement not to require the removal of the structure from the described easement, Owner . . . agrees and covenants to release the City from any and all future liability or damage to the described encroaching structure caused by any legitimate and lawful entry by the City . . . on the easement to construct, repair, replace, alter or service any drains, pipes, or any other structure installed by the City or caused by any failure or rupture of pipes for any reason whatsoever. The City hereby agrees that it shall exercise reasonable care to avoid unnecessary damage to the property described herein in the event of such repair, replacement, alteration or servicing to the easement shown on the plat. If damage to the property occurs the city agrees to restore to the best of its ability such damaged property.

On June 23, 2005, Cielinski's house and yard were flooded after a rainstorm. On June 22, 2006, Cielinski sued the City for nuisance and injunctive relief, alleging that the City had negligently failed to maintain the City's drainage system, thereby causing her property to flood, resulting in damage to her house and land. Cielinski further alleged that the City negligently constructed, maintained and operated the

drainage system, thereby creating and maintaining a nuisance and a continuing nuisance. Cielinski sought all applicable measures of damages, including general damages, punitive damages, litigation expenses and injunctive relief that would prohibit the City from allowing further water to flow onto her property. The City filed a motion for summary judgment, arguing that Cielinski's damages are limited by the 1991 agreement to the restoration of her property to the best of the City's ability, punitive damages are not allowed against a municipality, and Cielinski is not entitled to litigation expenses because a bona fide controversy exists.

Cielinski amended her complaint, alleging that the City's drainage system near her house was inadequate to handle the flow of water and adding a claim for breach of the 1991 agreement. The City filed a renewed motion for summary judgment, arguing that the alleged nuisance was permanent and therefore barred by the four-year statute of limitation. The City also argued that the 1991 contract was not applicable to the 2005 flooding damage.

In response to the motions for summary judgment, Cielinski offered evidence of numerous complaints made to the City about clogged inlets and gutters and flooding and maintenance and repair attempts made by the City to the drainage system between 1989 and 2005. According to Cielinski, the 2005 flood damaged her

3

garage and her house and caused mold to grow in her house. She produced photographs showing this alleged damage.

The trial court granted the City's motion for summary judgment with respect to punitive damages, but denied it without explanation as to all other claims by Cielinski, including her claim for litigation expenses. In a separate order, the trial court denied without explanation the City's renewed motion for summary judgment.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment, the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation and punctuation omitted.) *Weller v. Blake*, 315 Ga. App. 214, 215 (726 SE2d 698) (2012).

1. The City contends that the trial court erred in denying its motion for summary judgment because Cielinski's nuisance claim is barred by the applicable four-year statute of limitation set forth in OCGA § 9-3-30 (a). The City takes the

4

position that Cielinski's claims are based solely on the installation of the pipes and inlets near her home in 1991 and that the statute of limitation began to run on her permanent nuisance claim at that time.

In a factually-similar case, the Supreme Court of Georgia addressed the distinction between a permanent and continuing nuisance. *City of Atlanta v. Kleber*, 285 Ga. 413 (677 SE2d 134) (2009). In *Kleber*, the homeowners contended that the defendants had failed to properly maintain a drainage pipe and culvert near their property, resulting in their home being flooded during heavy rains. Id. The parties agreed to be bound by the findings of a court-appointed special master who determined that the homeowner's property was flooding because the pipe that drained the basin where the residence was located was not large enough, but that it was probably adequate at the time it was installed many decades earlier. Id. at 415. The trial court granted summary judgment to the defendants, and the Supreme Court affirmed.

The Court stated that "[t]he classification of an alleged nuisance as continuing in nature directly controls the manner in which the statute of limitations will be applied to the underlying claim." Id. at 416 (1).

A nuisance, permanent and continuing in its character, the destruction or damage being at once complete upon the completion of the act by which the nuisance is created, gives but one right of action, which accrues immediately upon the creation of the nuisance, and against which the statute of limitations begins, from that time, to run. Where a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie. This action accrues at the time of such continuance, and against it the statute of limitations runs only from the time of such accrual.

(Citation and punctuation omitted.) Id.

The Court ruled that to the extent the homeowners were complaining about the mere presence of the culvert and pipe as a nuisance due to improper installation, their nuisance claim was permanent in character and was barred by the statute of limitation. Id. at 416-417. To the extent that the homeowners were contending that the culvert and pipe had not been properly maintained, their nuisance claim was continuing in nature, allowing them to contend that the maintenance of the pipe and culvert within the four years preceding their lawsuit created a nuisance. Id. at 417. Because the special master found that the pipe had been kept in good working order and free of clogs and debris, the Court concluded that the pipe had been properly maintained, precluding a claim on that basis. Id. at 418 (2).

6

The homeowners in *Kleber* also claimed that the city had created a nuisance by maintaining a series of underground pipes that ultimately fed the pipe and culvert. Id. at 418 (3). Citing *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996), the Court in *Kleber* recognized that "where a municipality negligently constructs or undertakes to maintain a sewer or drainage system which causes the repeated flooding of property, a continuing, abatable nuisance is established, for which the municipality is liable," but held the city was not liable in that case because the homeowners had not shown that the city had taken steps to maintain the culvert, the drainage pipe or any other pipes leading to the culvert. Id. at 419 (3).

Here, as in *Kleber*, to the extent that Cielinski asserts a claim for permanent nuisance based on the installation of the drainage pipe in 1991, that claim is barred by the applicable four-year statute of limitation. See *Kleber*, 285 Ga. at 417 (1). But Cielinski's claim for continuing nuisance based on the City's negligent or improper maintenance of the drainage system is not similarly barred. Cielinski may therefore proceed with her claim that the City's maintenance of the drainage system within the four years prior to filing her initial complaint created a nuisance. See id. Unlike the homeowners in *Kleber*, Cielinski has offered evidence of numerous complaints received by the City regarding the drainage system and evidence that maintenance of

7

the system was undertaken by the City. Thus, summary judgment was properly denied on Cielinski's continuing nuisance claim.

The City contends that a recent Supreme Court decision on this issue requires a different result. *Oglethorpe Power Corp. v. Forrister*, 289 Ga. 331 (711 SE2d 641) (2011). In *Forrister*, the Court granted certiorari to consider "when the statute of limitation began to run in this action claiming that noise from a power plant operated by a public utility constitutes a nuisance." Id. Relying on the Restatement (Second) of Torts, § 930, cmt. (c), the Court concluded that the noise from the plant was a permanent nuisance because it resulted from a "substantial and relatively enduring feature of the plan of construction or . . . an essential method of operation," and thus could not be abated. Id. at 335 (2). As a result, the plaintiffs' action would be barred unless some new harm that was not previously observable occurred within four years prior to the filing of their complaint. Id. at 336 (3). Because evidence existed that there was an adverse change in the nature, as opposed to the degree, of the noise and vibration coming from the plant, the defendants were not fully entitled to summary judgment on the nuisance claim filed against them. Id. at 337 (3), (4).

In *Forrister*, the Court analogized the noise from the power plant to the inadequate culvert and pipe in *Kleber*, noting that its decision in *Kleber* regarding the

8

installation of the drainage system was supported by the same language from the Restatement – a "substantial and relatively enduring feature of the plan of construction or . . . an essential method of operation," is usually not abatable. Id. The Court also noted that its holding in *Kleber* regarding the improper maintenance of the culvert and pipe reflected "an improper and unnecessary method of operation" that "could be averted at slight expense" and was thus a continuing nuisance. Id. The same could be said of the improper maintenance alleged in this case. Thus, the *Forrister* decision does not alter our conclusion that summary judgment was properly denied on Cielinski's continuing nuisance claim.

2. The City contends that the trial court improperly denied its motion for summary judgment on Cielinski's claim for breach of the 1991 agreement. The City's primary argument is that the agreement does not apply in this case.

Initially, we note that

> the construction of a contract is a question of law for the court. And the construction of a contract involves three steps. The first step is to decide whether the language of the contract is clear and unambiguous. If so, the contract is enforced according to its plain terms, and the contract alone is looked to for meaning. Second, if the language of the contract is ambiguous in some respect, the rules of contract construction must be applied by the court to resolve the ambiguity. And finally, if ambiguity

9

remains after applying the rules of construction, "the issue of what the ambiguous language means and what the parties intended must be resolved by a jury." Indeed, "the cardinal rule of contract construction is to ascertain the intention of the parties."

(Citations omitted.) *Board of Commrs. v. City Commrs.*, 315 Ga. App. 696, 699 (727 SE2d 524) (2012).

The language of the 1991 agreement is clear and unambiguous. The purpose of the agreement is to resolve any potential problems relating to the City's right to require that some portion of the Cielinksi house be removed from its drainage and utility easement. The City agrees to exercise reasonable care to avoid unnecessary damage to the Cielinski property in the event it must enter the easement to construct, repair, replace, alter or service any drains, pipes or other structures installed by the City. Cielinksi is not seeking damages caused by the City while it was repairing or servicing drains or pipes in the easement area. And the agreement, by its terms, does not cover damages stemming from improper or negligent maintenance of the drainage system as a whole. Thus, summary judgment should have been granted on Cielinski's claim for breach of contract.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and McFadden, J., concur.*

10