**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 16, 2018**

# In the Court of Appeals of Georgia

A17A1946. CITY OF GAINESVILLE v. WALDRIP et al.

BETHEL, Judge.

Jack Waldrip and his company, Washington Corner, LLC, (together, "Waldrip") filed this action against the city of Gainesville for damages resulting from the flooding of Waldrip's property. The action asserted claims for nuisance, trespass, and the taking of the property through per se and inverse condemnation. The city sought summary judgment. The trial court granted the motion in part, awarding summary judgment to the city on Waldrip's claims for damages from flooding that occurred in 2008 and for the diminution in the fair market value of the property. The trial court otherwise denied the city's summary judgment motion.

The city appeals, arguing that the trial court should have granted summary judgment on all of the claims against it. We agree with the city that it is entitled to

summary judgment on its claims and that the trial court should have denied Waldrip's request for bad faith attorney fees. We therefore reverse the judgment of the trial court.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Atkinson v. City of Atlanta*, 325 Ga. App. 70, 70 (752 SE2d 130) (2013) (citation omitted). So viewed, the record shows that Waldrip and another individual own Washington Corner, LLC, which, in turn, owns a parcel of property in the city of Gainesville. The property is located within a 12-acre drainage basin, and storm water that falls into the drainage basin flows downhill to Waldrip's property.

Waldrip constructed a shopping center on the property. On March 15, 2008, April 10, 2009, September 21, 2009, October 1, 2012, and July 22, 2013, the property flooded, water entered the building, and the premises were damaged. After consulting various people, Waldrip concluded that the flooding resulted from trash, debris, and other material clogging his surface water drainage system. That material was washed

downhill to Waldrip's property by concentrated storm water that was discharged from a storm water discharge pipe on the uphill property.

Waldrip presented evidence that the city of Gainesville collects storm water in a catch basin on Rainey Street, which is uphill and north of Waldrip's property in the drainage basin. The Rainey Street catch basin channels the collected storm water into a storm water discharge pipe connected to the catch basin. The city installed at least part of the storm water discharge pipe. The storm water discharge pipe begins in the Rainey Street right of way and ends on private property uphill of Waldrip. The concentrated, collected water is discharged from the end of the storm water discharge pipe onto adjacent private property. The water traverses the property and flows down to Waldrip's property. The concentrated flows have sufficient hydrologic force to move debris down the private property — which has been used as an illegal dump — onto Waldrip's property and into his storm water collection system. Diapers, tires, bottles, construction debris, even concrete blocks have washed down the slope onto Waldrip's property. Dirt, sediment, and trash end up in Waldrip's drainage system, blocking it and causing flooding.

Waldrip sought compensation from the city for the damage to his property. After the city denied his claim, Waldrip filed suit, seeking damages for trespass,

nuisance, and the taking of his property. The trial court granted summary judgment to the city on Waldrip's claim for damages from flooding that occurred in 2008 and for the diminution in the fair market value of the property. The court denied summary judgment in all other respects. After we granted the city's application for interlocutory appeal, this appeal followed.

1. The city argues that the trial court erred by denying its motion for summary judgment because it does not have a duty to abate the flooding on Waldrip's property and because the undisputed evidence shows that the city did not take any action that altered or increased the natural flow of water onto Waldrip's property or otherwise caused the flooding. (Although the city does not specify, we presume that it makes these arguments in the context of the denial of its motion for summary judgment on Waldrip's nuisance claim instead of his trespass and condemnation claims.) We find that Waldrip has not presented sufficient evidence to create questions of fact on these issues.

"Where a municipality negligently constructs or undertakes to maintain a sewer or drainage system which causes the repeated flooding of property, a continuing, abatable nuisance is established, for which the municipality is liable." *City of Gainesville v. Waters*, 258 Ga. App. 555, 557 (1) (574 SE2d 638) (2002). See also

4

*Martin v. City of Fort Valley*, 235 Ga. App. 20, 21 (1) (508 SE2d 244) (1998); *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996). Further,

> [t]o be held liable for maintenance of a nuisance, the municipality must be chargeable with performing a continuous or regularly repetitious act, or creating a continuous or regularly repetitious condition, which causes the hurt, inconvenience or injury; the municipality must have knowledge or be chargeable with notice of the dangerous condition; and, if the municipality did not perform an act creating the dangerous condition, . . . the failure of the municipality to rectify the dangerous condition must be in violation of a duty to act.

*Mayor of Savannah v. Palmerio*, 242 Ga. 419, 426-427 (3) (i) (249 SE2d 224) (1978).

"All actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues." OCGA § 9-3-30 (a). "[T]o the extent that [Waldrip] asserts a claim for permanent nuisance based on the installation of the drainage pipe [or catch basin], that claim is barred by the applicable four-year statute of limitation." *City of Columbus v. Cielinski*, 319 Ga. App. 289, 292 (1) (734 SE2d 922) (2012) (citation omitted). This means that Waldrip must come forward with sufficient evidence to create a factual question as to (1) whether the private property onto which the Rainey Street culvert discharges water is part of the drainage system

that the city has undertaken to maintain, and (2) whether the city's maintenance (or lack thereof) of the drainage system caused the repeated flooding.

The city presented evidence that it does not own or maintain the property onto which the Rainey Street culvert discharges. Nor does the city have an easement on this property. The city claims that because the problematic debris, trash, and sediment originate from and are picked up on this private property, it is absolved of liability. However, the fact that this occurs as the water crosses private property is not sufficient, alone, to end our analysis. "[W]hile ownership of property generally may give rise to a nuisance when property is used to cause harm to others, such ownership is not an essential element of the cause of action for nuisance. Rather, the exercise of dominion or control over the property causing the harm is sufficient to establish nuisance liability." *City of Atlanta v. Hofrichter/Stiakakis*, 291 Ga. App. 883, 886 (1) (a) (663 SE2d 379) (2008) (citations and punctuation omitted).

Here, Waldrip has presented no evidence that the city exercised any dominion or control over the property causing the harm — that is, the uphill property which the water traverses. *Compare City of Atlanta*, 291 Ga. App. at 886 (1) (a) (control established where city returned to property multiple times and attempted to repair problem with pipe over the course of several years). Evidence that the city cleared out

6

concrete blocks and debris on Waldrip's property on one occasion is not sufficient to establish the city's dominion and control over the neighboring, uphill property. See *Thompson v. City of Fitzgerald*, 248 Ga. App. 725, 726-727 (1) (548 SE2d 368) (2001). Therefore, summary judgment should have been granted to the city and Waldrip's request for attorney fees under OCGA § 13-6-11 related to that claim should have been denied.[1]

2. Because of our holding in Division 1, we need not address the city's other enumerations of error.

*Judgment reversed. Branch, J., concurs. McFadden, P.J., dissents\**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. SEE COURT OF APPEALS RULE 33.2 (a).**

---

[1] Because the trial court did not analyze whether Waldrip would be entitled to attorney fees under OCGA § 13-6-11 for his remaining causes of action that are not before this court, we do not reach the question of whether the city is entitled to summary judgment on the entirety of Waldrip's claim for attorney fees.

7

A17A1946. CITY OF GAINESVILLE v. WALDRIP et al.

MᴄFᴀᴅᴅᴇɴ, Presiding Judge, dissenting.

I respectfully dissent. I agree with the city that it is entitled to summary judgment on any claims seeking damages for incidents that occurred more than four years before the filing of the lawsuit, because those claims are barred by the statute of limitation. But as for the remaining claims, the plaintiffs ("Waldrip") presented sufficient evidence to create factual questions as to whether the city had a duty to Waldrip, whether the city caused the flooding, whether Waldrip put the city on notice of the condition that was causing the flooding, and whether Waldrip was entitled to bad faith attorney fees. I would pretermit whether the trial court erred by considering the affidavit of Waldrip's expert witness. So I would affirm

in part and reverse in part the trial court's denial of the city's motion for summary judgment.

1. Summary judgment.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." Atkinson v. City of Atlanta, 325 Ga. App. 70, 70 (752 SE2d 130) (2013) (citation omitted).

(a) Duty and causation.

The city argues that the trial court erred by denying its motion for summary judgment because it does not have a duty to abate the flooding on Waldrip's property, and the undisputed evidence shows that the city did not take any action that altered or increased the natural flow of water onto Waldrip's property or otherwise caused the flooding. (Although the city does not specify, I presume that it makes these arguments in the context of the denial of its motion for summary judgment on Waldrip's nuisance claim instead of his trespass and condemnation claims.) I would find that Waldrip has presented sufficient evidence to create questions of fact on these issues.

For Waldrip to state a claim of nuisance against the city, he "must establish that (1) the city's conduct was egregious enough to exceed mere negligence, (2) the resulting continuous or repetitious dangerous condition was of some duration, and (3) the city failed to correct the danger within a reasonable time after acquiring knowledge of the defect or dangerous condition." City of East Point v. Young, 340 Ga. App. 223, 226 (3) (797 SE2d 156) (2017) (citation omitted). In order for the city to be held liable for nuisance, its "ownership of land . . . is not an element, but control is; the essential element of nuisance is control over the cause of the harm. The tortfeasor must be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance." Sumitomo Corp. of America v. Deal, 256 Ga. App. 703, 707 (2) (569 SE2d 608) (2002) (citation and punctuation omitted; emphasis added).

Waldrip's nuisance claim stems from the city's alleged conduct leading to the discharge of surface water onto his land. When it comes to surface water, a "land proprietor has no right to concentrate and collect it, and thus cause it to be discharged upon the land of a lower proprietor in greater quantities at a particular locality, or in a manner different from that in which the water would be received by the lower estate if it simply ran down upon it from the upper by the law of

3

gravitation." Gill v. First Christian Church, 216 Ga. 454, 454 (1) (117 SE2d 164) (1960) (punctuation omitted). And even though a city may have "[a] general grant of power to grade streets and to establish in connection therewith a system of drainage[, that] does not carry with it any right on the part of the municipality to create and maintain a nuisance by causing surface-water to be discharged upon the premises of a private citizen. . . . " Bass Canning Co. v. MacDougald Constr. Co., 174 Ga. 222, 223 (162 SE 687) (1932) (citation and punctuation omitted).

The city argues that it owes no duty to Waldrip because it is not responsible for the private drainage infrastructure — referring to the storm water discharge pipe on the parcels above Waldrip through which the water travels from the Rainey Street catch basin — as it does not exercise dominion or control over it. The city adds that it does not own the pipe, it does not have an easement to use that pipe, and the flooding is the result of the natural flow of storm water. The city presented the affidavit of its director of public works who testified that the city is not responsible for the maintenance of any storm water structures located on private property for which the city does not have a drainage easement. He testified that the city does not have any drainage easements located on private property within the drainage basin in which Waldrip's property is located.

4

The city does not dispute, however, that the storm water discharge pipe "carrie[s] water channeled from a [c]ity street, via the catch basins which [are] admittedly owned and maintained by the [c]ity." City of Atlanta v. Hofrichter, 291 Ga. App. 883, 888 (2) (a) (663 SE2d 379) (2008). Further, the record in the application for interlocutory appeal previously filed in this case included the city's discovery response in which it admitted that "it installed the Rainey Street storm water discharge pipe end culvert. . . ." See Hunter v. Roberts, 199 Ga. App. 318, 318 (1) (404 SE2d 645) (1991) ("[W]e can take judicial notice of the record filed in the application for interlocutory appeal previously filed in this case in our court.") (citation omitted). And it is undisputed that the city's Rainey Street catch basin is connected to the pipe. This evidence would allow a jury to conclude that the storm water is collected in a city-owned catch basin on Rainey Street; that the water then is conveyed by a storm water discharge pipe that begins in the Rainey Street right of way and is connected to the city's catch basin; that the storm water discharge pipe continues under private property north of Waldrip's property; that the pipe terminates on a private parcel above Waldrip's property; that storm water, channeled into the pipe from the city's catch basin, is discharged from the pipe onto the private parcel;   that as the water is discharged from the pipe, its

5

hydrologic force transports sediment, eroded soil, trash, and other debris onto Waldrip's property downhill;  and that this sediment and debris clog Waldrip's pipe and reduce its flow capacity, which leads to flooding.

Whether or not the city owns the pipe, the city's instrumentality – the catch basin – funnels water into that pipe. And that water is discharged onto private property in which the city admits it has no easement. Waldrip has presented some evidence that would allow a jury to conclude that the city has at least partial control over the cause of the harm, that the city has claimed the right to discharge water onto private property without an easement, and that it is at least a concurrent cause of the creation, continuance, or maintenance of the nuisance. See City of Columbus v. Barngrover, 250 Ga. App. 589, 593 (1) (b) (552 SE2d 536) (2001). See also City of Atlanta v. Williams, 218 Ga. 379, 380-381 (1) (128 SE2d 41) (1962) ("If the city claims a right to use the drainage ditch then it is under a duty to maintain it so that the content and flow of surface waters would not overflow to the damage of the adjacent property owners.") (citation omitted). Compare City of Atlanta v. Demita, 329 Ga. App. 33, 38 (1) (762 SE2d 436) (2014) (physical precedent only) (finding no municipal liability where "[t]his [was] not a case

6

where the [c]ity's conduct in maintaining a street diverted or changed the flow of water so that it flooded adjacent property") (emphasis supplied).

The city also argues that it is not liable because it did nothing to alter or increase the natural flow of storm water that entered Waldrip's property. Waldrip presented evidence, however, that would allow a jury to conclude that the storm water discharges are not the natural flow of storm water but instead are concentrated from the collection of water from roads by the city curbs, gutters, and drains. He presented evidence that the catch basin channels the water into the storm water drainage pipe and that the system of catch basin and drainage pipe concentrates the water so that when it is discharged from the pipe, it has sufficient hydrologic force to wash trash down the hill into Waldrip's drainage system. This evidence would allow a jury to find that the city concentrates and collects surface water, uses the allegedly private pipe to convey the water from the catch basin, and "cause[s] it to be discharged upon the land of a lower proprietor . . . in a manner different from that in which the water would be received by the lower estate if it simply ran down upon it from the upper by the law of gravitation. [Cits.]." Gill, 216 Ga. at 454 (1).

7

The majority holds that the city is entitled to summary judgment because there is no evidence of improper maintenance of anything the city owns or controls and no evidence that the city owns or controls the uphill property that the water traverses. The majority reads the case law too narrowly.

If the flooding were being caused by improper maintenance for which the city were responsible or if the city controlled the uphill property such evidence would certainly be sufficient to establish a nuisance. But such evidence is not necessary to establish nuisance. The applicable law is not so narrow and fact-specific. As detailed above, the "essential element" of liability for nuisance "is control over the cause of the harm." Sumitomo, 256 Ga. App. at 707 (2). And concurrent causation is sufficient. Id.

Waldrip's evidence shows that the cause of harm is a combination of concurrent factors: the city's discharge, without permission, through a pipe it constructed and may still own, of water it collects through its infrastructure onto the uphill property as well as the presence of trash and debris on that property. That evidence would authorize a jury to find that the city has at least partial control over one of the factors that causes the harm and so to find that the city's action or inaction is at least a concurrent cause of the creation, continuance, or

8

maintenance of the nuisance. A jury that so found would be authorized to hold the city liable. See Sumitomo, 256 Ga. App. at 707 (2).

(b) Notice.

The city argues that it is entitled to summary judgment because, although Waldrip notified it of the flooding, he did not notify the city that something within its control was causing the flooding. I disagree.

One of the factors required to show a nuisance is the "[f]ailure of the municipality to act within a reasonable time after knowledge of the defect or dangerous condition. [This] factor requires either knowledge or notice of the dangerous condition." Earnheart v. Scott, 213 Ga. App. 188, 189 (1) (444 SE2d 128) (1994) (citations and punctuation omitted). Waldrip has pointed to evidence that the city was on notice that it needed to act within a reasonable time. For example, in October 2009, Waldrip submitted a claim form to the city following the April 2009 flood stating that rain water entered his drainage system but was unable to discharge into the city system due to the amount of rain, resulting in flooding. Waldrip testified that he filed a second claim form in October 2012. He testified, since the first flood, that he had many conversations over the years with city representatives, including the mayor, the city manager, the city attorney, the

9

city engineer, and the assistant city engineer, complaining about the concentrated storm water being discharged from the pipe above his shopping center and the trash, debris, and other pollution that was repeatedly clogging his drainage system. In February 2011, he wrote the city complaining about the city's collected, concentrated water flowing into the pipe above his property and emptying there. His ante litem notice sent in September 2013 described the problem in detail. The trial court did not err by denying summary judgment on the ground that genuine issues of material fact exist as to notice.

(c) Statute of limitation.

The city argues that it is entitled to summary judgment because the statute of limitation bars Waldrip's claims since the nuisance is permanent. I agree that to the extent Waldrip seeks damages stemming from a permanent nuisance, the statute of limitation bars the claims, given that the drainage infrastructure was constructed some time in the 1940s. But I would find that there is evidence that would allow the factfinder to conclude that the nuisance is, at least in part, abatable. And the statute of limitation bars only those claims stemming from an abatable nuisance that occurred more than four years prior to the filing of the

10

lawsuit. Thus I would affirm in part and reverse in part the trial court's denial of the city's summary judgment motion on statute of limitation grounds.

"All actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues." OCGA § 9-3-30 (a). "[T]o the extent that [Waldrip] asserts a claim for permanent nuisance based on the installation of the drainage pipe [or catch basin], that claim is barred by the applicable four-year statute of limitation." City of Columbus v. Cielinski, 319 Ga. App. 289, 292 (1) (734 SE2d 922) (2012) (citation omitted). However,"[w]here a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie." Bailey v. Annistown Road Baptist Church, 301 Ga. App. 677, 688 (7) (689 SE2d 62) (2009) (citations omitted). Repeated incidents of flooding can be sufficient to establish an abatable nuisance. See City of Gainesville v. Waters, 258 Ga. App. 555, 557 (1) (574 SE2d 638) (2002) (holding that plaintiffs "presented evidence of repeated incidents of flooding to [their] property sufficient to establish an abatable nuisance"). Waldrip presented expert testimony that the city can abate the nuisance easily and cheaply. He also presented evidence of repeated incidents of flooding. Thus there is

11

evidence from which a factfinder could conclude that Waldrip's claims stem, at least in part, from an abatable nuisance.

"[I]n a continuing, abatable nuisance case, OCGA § 9-3-30 does not preclude recovery for any damages save those which were suffered more than [four] years prior to the filing of the suit." City of Gainesville, 258 Ga. App. at 558 (3) (citation and punctuation omitted). Waldrip filed this action on March 18, 2014, so his claims for damages suffered more than four years before that date are barred. (The trial court granted summary judgment to the city on Waldrip's claims stemming from the 2008 flooding on different grounds, but the court did not grant summary judgment to the city on Waldrip's claims stemming from the April and September, 2009 flooding. ) But to the extent the factfinder determined some of the claims are for a continuing, abatable nuisance, Waldrip's claims for damages suffered less than four years before that date would not be barred. Accordingly I would reverse in part the trial court's denial of the city's motion for summary judgment on statute of limitation grounds.

2. Affidavit of expert witness.

The city argues that the trial court erred by considering one of Waldrip's expert affidavits because Waldrip did not disclose this expert in a timely manner

and because the expert failed to attach to his affidavit materials upon which he relied in reaching his conclusions.

Pretermitting whether the trial court erred in considering the affidavit, any error was harmless. Waldrip presented other evidence — even without the affidavit — sufficient to create questions of material fact.

3. Bad faith attorney fees.

The city argues that the trial court erred by denying its motion for summary judgment on Waldrip's claim for OCGA § 13-6-11 attorney fees because the trial court did not point to any evidence from which a jury could determine that the city had acted in bad faith. The trial court simply ruled that this is not one of those rare cases authorizing summary adjudication of the issue. I agree with the trial court. Waldrip has presented "some evidence that, despite [his] numerous complaints and its knowledge that [Waldrip's] property flooded as a result of its failure to act, the [c]ity refused to alleviate the drainage problems." City of Gainesville, 258 Ga. App. at 559 (4). This would allow a jury to find bad faith sufficient to support an award of attorney fees under OCGA § 13-6-11. Id.