A09A1186. BAILEY v. ANNISTOWN ROAD BAPTIST
CHURCH, INC. et al.
A09A1231. GWINNETT COUNTY v. BAILEY.
A09A1717. ANNISTOWN ROAD BAPTIST CHURCH, INC.
v. BAILEY.
(689 SE2d 62)

ADAMS, Judge.

Beginning in late 2004, a significant amount of water intruded on Leila Bailey's residential property in Gwinnett County. She eventually brought suit for trespass, nuisance and negligence against Annistown Road Baptist Church ("ARBC"), the owner of the property directly across the street, and against Gwinnett County, which maintained the adjacent roads and utility lines. At trial, the jury returned a verdict partially in her favor, and she appeals. Both defendants cross-appeal.

Construed in favor of the verdict,[1] the evidence shows that Bailey lives at the intersection of Annistown Road and Spain Road in Snellville, Gwinnett County. ARBC is located across Spain Road and it is uphill from Bailey's property. Bailey purchased the property, a

---

[1] See *Wright v. Thompson*, 236 Ga. 655, 659 (225 SE2d 226) (1976); *Wildcat Cliffs Builders v. Hagwood*, 292 Ga. App. 244 (663 SE2d 818) (2008).

corner lot, in 1985, and it is the lowest land in the surrounding area. Some time after moving in, Bailey experienced surface water problems, and for a period of years she landscaped the yard, added truckloads of gravel, and added two or three French drains and a storm water retention pit to help control runoff. These projects ended in 1996, and they appeared to control the runoff problem.

In 1997, the County began work on a project to widen Annistown Road from two to four lanes. The County condemned some of Bailey's property and paid her $40,000 compensation for a right-of-way and permanent construction easement. Bailey lost to the County land, landscaping, fencing, a play area and some portion of the French drains. The County project was completed in 2000, and it included the installation of curbs and gutters on Annistown Road to control runoff, whereas none had been there before; these improvements were for the purpose of containing and controlling stormwater and routing it into a stormwater system. Bailey understood that these improvements would take care of the water coming from Annistown Road, and she did not experience water runoff problems after completion of the project. She elected not to replace the French drains or the playground. Although the cost to replace the French drains was used during the negotiations for the compensation she received, Bailey did not commit to anyone nor have a duty to any third party to rebuild them.

Beginning in January 2004, Bailey noticed water standing in the crawl space under her house, and she installed a pump to remove the water. The pump was not sufficient, and a second pump was added. The water was not running off the surface of neighboring properties. Bailey reported the problem to the County that month. From January through March 2004, the County attempted to locate the source of the water but failed and stopped looking.

Bailey hired John Goga, a contractor, to investigate. On March 17, 2004, when he went to investigate, a large portion of Bailey's yard was completely saturated with water. Goga also saw standing water in the crawlspace of the house where a pump was running totally submerged. He noticed a strong smell of chlorine in the water in the crawlspace, indicating the water might be coming from the County fresh water system, and he saw small spouts of water shooting up from the ground. Bailey's water meter was not turning at the time. As he continued to search for the source of the water, he eventually began to investigate utilities on neighboring property. Goga found the source of the leak. ARBC has a sprinkler/fire suppression system, and part of the system's pipes and valves are stored in an underground concrete chamber or vault. The vault is located on the ARBC property, directly across Spain Road and about 300 feet uphill from Bailey's property. An eight-inch, fully pressur-

ized water pipe had ruptured, and thousands of gallons of water were escaping under the vault (which was designed to allow water to escape) and into the ground rather than the vault overflowing. Goga testified that the water in the vault was swirling like a whirlpool or hot tub but the water level was not rising; the jury saw a video of that scene. The leak was found on the County side of the church's water meter. The water was chlorinated, and chlorinated water was also flooding a similar gas pipeline vault located downhill toward Bailey's property on the edge of the ARBC property near the intersection of the two roads. It was unclear how long the leak had been present; the pipe was last inspected in July or August 2003. But water was not running over the surface of the land onto Bailey's property, and the church's above-ground storm water retention pond, which was also located near the intersection, was dry. In a nearby manhole, Goga observed water flowing on the outside of a pipe into the manhole, which was abnormal. Bailey notified the County and ARBC, and the two acted promptly to repair the leak. Goga installed a 2,700-gallon per hour pump that ran all day and the next. Goga left the pump there for months afterward; it operated automatically.

With the leak repaired and with the aid of the pump, Bailey's land began drying out, and the water under her house disappeared. But despite an area-wide drought, ever since that time and at least through the time of trial, every rainstorm caused unprecedented excessive flooding on Bailey's property and under her house. Bailey took steps to try to stop the problem but was unsuccessful. During the summer of 2004, she hired an engineering firm to determine the cause. Edward Haight inspected all the relevant areas of Bailey's property and the surrounding roads and properties including all utility lines, pipelines, and vaults; he analyzed the local topography; he tested and probed underground areas; and he reviewed the evidence related to the earlier leak including the video of the original leak and the water flowing outside of a pipe. He determined that Bailey's property was lower than the County utility lines that ran under Spain Road toward her property. He also found in a manhole an abandoned pipe coming from the church side of Spain Road and running toward the intersection of the two roads.

Haight presented his opinion at trial that the original water leak led to a large amount of underground water which carved out cavities or voids in underground soil surrounding County utility lines and pipelines running on church and County property between the fire suppression vault and Bailey's property. He acknowledged that some of the cavities or voids may have already been there but that they were made worse as a result of the initial leak. Thus, all told, the original leak had created an underground "preferential pathway" for rainwater to flow from the ARBC property to Bailey's

property. A soil scientist added that the water table had not changed since the house was built.

As a result of the constant flooding, mold invaded Bailey's home and affected all of her belongings, and Bailey was forced to move out in January 2005, although some evidence was presented to suggest that she could have taken additional steps to protect her home after the problem proved to be recurrent, such as adding French drains or taking steps to alleviate the mold. She abandoned most but not all of her personal property when she left.

Bailey gave ante litem notice to the County on May 24, 2005 pursuant to OCGA § 36-11-1. She sent a second notice on February 2, 2007. In response to a pretrial motion, the court ruled that Bailey's claims against the County were limited to the damages incurred during the 12 months preceding service of the first ante litem notice under OCGA § 36-11-1.

Unwilling to forgive those whom she believed had trespassed against her, Bailey filed suit against ARBC on June 29, 2006 and alleged trespass, nuisance, and negligence. She amended her suit to add the County. In the amended complaint, she conceded that the defendants had fixed the leak in the fire suppression system but alleged that rainwater continued to come onto her property from under the road. She added allegations that the County's drainage system associated with the neighboring roads was flawed and that it caused water to drain onto her property via the subsurface of Spain Road. In essence, Bailey claimed that the initial release of water was a trespass and that the continuation of the problem as a result of the cavities or voids under Spain Road caused a nuisance.

The case came to trial. After the close of the evidence, Bailey dismissed her negligence claims against both defendants. Thereafter, precipitated by the trial court, the jury returned two slightly different verdicts on a form prepared by the court. In the first instance, the jury found against ARBC on the trespass claim in the amount of $25,444. On the nuisance claim, the jury found against the County in the amount of $176,780 and against ARBC in the amount of $55,805. With regard to the nuisance claim against the County, the jury found that Bailey was 50 percent at fault for her damages for the relevant time period and that the County and ARBC were at fault 25 percent each.

Before accepting the verdict, the court and the parties realized that in response to one or more of the jury's questions for the court, the jury had not been fully charged with the applicable law of apportionment of damages under OCGA § 51-12-33 (g). The jury had not been told that if it found Bailey 50 percent or more at fault, she stood to recover nothing from the County. The court elected to charge the jury on this point of law and ask it to deliberate again and

complete a modified blank jury form. The County objected to the re-deliberation. This time, the jury made the same findings regarding trespass, nuisance and damages, but it found Bailey only 49 percent at fault for nuisance damages and found that the County and ARBC were at fault by 25 percent and 26 percent, respectively, for the relevant one-year time period applicable to the County.

In its final judgment, the trial court stated that the second verdict "more accurately reflect[ed] the intent of the jury." But the court ultimately decided that the second verdict could not be accepted over the County's objection. It reasoned that although it should have properly charged the jury initially, neither party had requested a charge on subsection (g) in writing, and Bailey did not object to the court's response to the jury's question wherein the court failed to charge on subsection (g). Therefore, the court entered judgment on the first verdict, which, because of the finding that Bailey was 50 percent at fault for any nuisance, resulted in an award of zero dollars on the nuisance claim against the County under OCGA § 51-12-33 (g). Bailey was awarded a total of $81,249 against ARBC — the sum of the nuisance and trespass awards against the church.

## Case No. A09A1186

1. Prior to trial, Bailey moved in limine to exclude any evidence suggesting that she should have built or re-built French drains on her property after the condemnation in 2000 or in response to the 2004 flooding. She argued that the evidence was irrelevant because a landowner has no obligation to stop trespassers and nuisances from coming onto her property. The court denied Bailey's motion and ruled that the issue of the preexisting drainage condition on Bailey's property, including as of 2000, and her failure to mitigate following the 2004 leak were both matters for the jury. The evidence was only allowed in relation to Bailey's nuisance claim against the County.

As a result, throughout the trial, the County, as well as ARBC, introduced evidence of Bailey's decisions to not install French drains, as well as evidence that she received $40,000 in the condemnation but never used the money to install more French drains. The county even argued that it had effectively paid for French drains in the form of the condemnation award. The defendants attempted to show that had Bailey installed French drains either in 2000 or after the 2004 flooding began, it would have significantly alleviated the problem that began with the sprinkler vault leak. And the jury initially found Bailey 50 percent at fault for the damages to her property.

"Whether to admit evidence objected to on the ground of

relevancy is within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion." *Moxley v. Moxley*, 281 Ga. 326, 327 (2) (638 SE2d 284) (2006). We find no clear error.

In addition to trespass and nuisance, Bailey asserted a claim of negligence against the defendants and did not withdraw it until the evidence was closed. At a minimum, the evidence she sought to exclude was relevant to that claim in several ways. Evidence of contributory negligence showing that the plaintiff "is to some degree responsible for the injury or damages claimed" is relevant and admissible for reduction and apportionment of damages in cases involving injury to persons or property. See OCGA § 51-12-33 (a). "Closely allied to the doctrine of contributory negligence is the rule of 'avoidable consequences,' which denies recovery for any damages which could have been avoided by reasonable conduct on the part of the plaintiff." (Citation and punctuation omitted.) *Osburn v. Pilgrim*, 246 Ga. 688, 695 (273 SE2d 118) (1980). See also OCGA § 51-11-7 (avoidance of consequences). And a plaintiff injured by the negligence of another "must mitigate his damages as far as is practicable by the use of ordinary care and diligence." OCGA § 51-12-11. Bailey does not challenge any aspect of the related jury charges. In short, any possible error admitting evidence of mitigation or decisions regarding the French drains vis-à-vis her claims of nuisance and trespass was self-induced. See generally *Scott v. Scott*, 282 Ga. 36, 38 (4) (644 SE2d 842) (2007) (induced error).

2. Bailey contends the trial court erred by refusing to accept the jury's second verdict. We agree. Prior to beginning deliberations, the jury was charged with only a part of the law regarding reduction and apportionment of damages under OCGA § 51-12-33. The jury was not charged with subsection (g), which states that the plaintiff may not recover if he or she is 50 percent or more responsible for the injury or damages claimed. During the deliberations, the jury asked the court several questions about apportionment of damages that revealed confusion among the jury, as well as counsel, about apportionment of damages and how to use the verdict form that had been prepared by the court to show the correct apportionment. The court attempted to answer the questions and it gave additional charges, but the jury was still not instructed on subsection (g). The jury returned a verdict finding that Bailey was 50 percent at fault.

The jury was sent out, and the court and attorneys began to discuss the verdict and the failure to charge subsection (g) became apparent. The court and the attorneys realized that there were other flaws in the verdict form as well. The court reached a point of concluding that a mistrial was a possibility because of the jurors' confusion with the form and the law. So the court chose to send the

jury out with a modified verdict form and with a charge that included OCGA § 51-12-33 (g). This time the jury found Bailey to be 49 percent at fault.

We find that the court erred by entering judgment on the first verdict. The court erroneously found that it was bound to do so because there was no case law holding that the jury must be instructed on subsection (g) and that, although it should have given the charge, it was not error to do so because Bailey had not made a written request to charge subsection (g) and had not made a separate objection regarding subsection (g) in response to the court's charges. We hold that the court had the authority and duty to instruct the jury to reconsider the verdict once a substantial error in the charge was discovered even though the plaintiff had not objected to the court's actions. *DeKalb County v. McFarland*, 231 Ga. 649, 656 (2) (y) (203 SE2d 495) (1974); *Lowery v. Morton*, 200 Ga. 227, 229 (36 SE2d 661) (1946). "[I]t is not error for a trial judge not to receive an improper or imperfect verdict, and to cause the jury to retire and put their verdict in proper form." *Lowery*, 200 Ga. at 229. Here, the jury's questions and the lengthy discussion among counsel and the court show that the charges and the verdict form created substantial uncertainty about the meaning of the jury's initial decision. At that point the court made the correct decision:

> Whenever a verdict is ambiguous and uncertain in its meaning or does not cover a substantial issue made by the pleadings in the case upon which proof is offered, it is proper to have the jury retire again for the purpose of rendering another verdict, under proper instructions from the court. It is better to do this than to receive the verdict, which would probably have to be set aside on a motion for a new trial, resulting in the expense and trouble of another trial.

(Citations and punctuation omitted.) Id.

And under the facts of the case, the initial failure to charge on subsection (g) was harmful as a matter of law. Given the charges to the jury and the verdict form, it is clear that the jury was initially erroneously instructed that Bailey's award would be reduced only by Bailey's degree of fault no matter what percentage the jury found. Thus the jury's initial decision showed an intent to reduce Bailey's award by only 50 percent, not 100 percent. Once the jury was fully instructed, the jury confirmed that intent in the second verdict, and the court was required to enter judgment in accordance with that intent. "A judgment must conform to the verdict (OCGA § 9-12-9); and likewise it must follow the true meaning and intent of the

finding of the jury." (Citations and punctuation omitted.) *C&S/ Sovran Corp. v. First Fed. Sav. Bank &c.*, 266 Ga. 104, 108 (3) (463 SE2d 892) (1995).[2]

We therefore vacate the judgment below and remand with instruction to enter judgment in accordance with the second verdict.

3. Bailey contends the trial court improperly limited her claim against the County to the 12-month period preceding her ante litem notice. We disagree. The trial court based its decision on OCGA § 36-11-1, which provides, "All claims against counties must be presented within 12 months after they accrue or become payable or the same are barred. . . ." The Supreme Court has stated that under this Code section a plaintiff "is entitled to recover those damages incurred in the 12-months preceding the giving of the notice. [Cits.]" *Reid v. Gwinnett County*, 242 Ga. 88, 89-90 (249 SE2d 559) (1978); *DeKalb County v. McFarland*, 223 Ga. 196, 200 (2) (154 SE2d 203) (1967); *Nalley v. Carroll County*, 135 Ga. 835, 837 (70 SE 788) (1911). See also *City of Chamblee v. Maxwell*, 264 Ga. 635, 637 (452 SE2d 488) (1994). We find *City of Atlanta v. Landmark Environmental Indus.*, 272 Ga. App. 732, 743-744 (9) (613 SE2d 131) (2005), to be neither controlling nor persuasive because of the differences between the origin of claims against counties and cities. See generally *Stanfield v. Glynn County*, 280 Ga. 785, 786 (1) (631 SE2d 374) (2006); *Duffield v. DeKalb County*, 242 Ga. 432, 436 (249 SE2d 235) (1978).

Bailey also claims that the court erred by failing to allow her to assert claims in relation to a second notice sent to the County on February 2, 2007. At best, in a claim against a county, Bailey would only be allowed to assert a claim for a second time period if she could show that the extent of the nuisance had increased, "so as to amount to the additional taking of property or additional damages to the property owner" in the second 12-month period. See *Duffield*, 242 Ga. at 436. Bailey has not shown that the County's taking increased after the original 12-month period.

### Case No. A09A1231

In Case No. A09A1231, Gwinnett County appeals and contends the trial court erred by denying its motion for summary judgment on Bailey's nuisance claim and by denying its motion for summary judgment and motion for directed verdict based on an alleged flaw in

---

[2] See generally *Pearson v. Tippmann Pneumatics*, 281 Ga. 740, 744 (3) (642 SE2d 691) (2007) (incomplete and inaccurate jury charges on legal principles that go to the crux of the plaintiff's case are substantial and harmful as a matter of law). See also *Lawyers Title Ins. Corp. v. New Freedom Mtg. Corp.*, 288 Ga. App. 350, 352 (1) (654 SE2d 190) (2007) (crux of the defense).

Bailey's ante litem notice.

4. With regard to the denial of summary judgment, " ' "[a]fter verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case." (Cit.)' [Cit.]" *Kicklighter v. Woodward*, 267 Ga. 157, 162 (4) (476 SE2d 248) (1996). Instead we may only review the sufficiency of the evidence in the light most favorable to the verdict and review enumerations of alleged trial errors. *Hamrick v. Greenway*, 257 Ga. 287, 288 (2) (357 SE2d 580) (1987); *Cawley v. Bennett*, 293 Ga. App. 46, 47 (1) (666 SE2d 438) (2008).

Construed in favor of the verdict, the evidence established a nuisance either created, continued or maintained by the County. A county is only liable if it creates a condition on private property that amounts to an inverse condemnation or a taking without compensation. *DeKalb County v. Orwig*, 261 Ga. 137, 138 (1) (402 SE2d 513) (1991). Evidence was presented that the County water leaked out of the sprinkler vault and flooded Bailey's property and that the leak also created underground voids that led to further flooding of her property on a repeated basis. The County was made aware of the problem and has been unable to fix it; and Bailey's house and its contents have been ruined. The County also knew about an abandoned and crushed pipe in its drainage system and did not repair it until November 7, 2005. The flooding was not a single isolated occurrence because the initial leak created the voids that led to further flooding. And the voids were located on County and church property, not the plaintiff's property. This distinguishes the County's case law standing for the proposition that a single leak that causes permanent damage *to the plaintiff's property* cannot be considered a nuisance. See, e.g., *Desprint Svcs. v. DeKalb County*, 188 Ga. App. 218 (372 SE2d 488) (1988).

5. The County contends the trial court erred by denying its motion for directed verdict on the grounds that Bailey's ante litem notice pursuant to OCGA § 36-11-1 expressly limited her claims to personal property damages only. "The standard of appellate review of a trial court's denial of a motion for a directed verdict or motion for judgment notwithstanding the verdict is the 'any evidence' test. [Cit.]" *Galardi v. Steele-Inman*, 266 Ga. App. 515, 516 (1) (597 SE2d 571) (2004).

OCGA § 36-11-1 states:

All claims against counties must be presented within 12 months after they accrue or become payable or the same are barred, provided that minors or other persons laboring

under disabilities shall be allowed 12 months after the removal of the disability to present their claims.

Bailey's ante litem notice to the County states that she is investigating a suit "for the damage to her personal property." But it goes on to say that the County's activities may have "result[ed] in flood damage to Ms. Bailey's property" and that she would be "seeking monetary damages for her property damages." This notice is ambiguous at worst, and a reasonable person could construe it to refer to all of her property, personal and real. Furthermore, " 'the object of presenting a claim to a county before the institution of suit is to afford the county an opportunity to investigate the claim and ascertain the evidence and to avoid the incurrence of unnecessary litigation.' *Davis v. Cobb County*, 65 Ga. App. 533, 534 (15 SE2d 814) (1941)." (Punctuation omitted.) *Burton v. DeKalb County*, 202 Ga. App. 676, 678 (415 SE2d 647) (1992). Consequently, only substantial compliance is required. Id. A directed verdict was not demanded.

The cases cited by the County pertain to the notice required by statute in cases against municipalities. That Code section specifically requires that the notice state "the time, place, and extent of the injury, as nearly as practicable, and the negligence which caused the injury." OCGA § 36-33-5 (b). See, e.g., *Davis v. City of Forsyth*, 275 Ga. App. 747 (621 SE2d 495) (2006) (notice of request for "monetary damages in the form of lost rental income, lost wages, expenses, and aggravation" not sufficient notice of claim for personal injury); *Harris-Jackson v. City of Cochran*, 287 Ga. App. 722 (652 SE2d 607) (2007) (notice of damage to vehicle not sufficient notice of a personal injury claim). Because the cases are based on a different statute with different requirements and because of the factual distinctions between those cases and the present case, we find these cases are not controlling.

## Case No. A09A1717

ARBC asserts that 11 errors were made. It begins by asserting six reasons the trial court erred by failing to grant its motions for directed verdict (DV) or judgment notwithstanding the verdict (JNOV). We again apply the any evidence test:

Where there is any evidence upon which the verdict can be based, . . . the jury is free to disbelieve whatever facts are inconsistent with their conclusion and the court cannot substitute its conclusion for that of the jury and enter a judgment notwithstanding the verdict. . . .

(Citations and punctuation omitted.) *King v. Brown*, 280 Ga. 747,

748 (1) (632 SE2d 638) (2006).

6. The church contends it was entitled to a DV or JNOV because the evidence showed that it was an innocent trespasser as a matter of law and the court should have charged on that defense, which states that "an unintentional and nonnegligent entry onto another's land does not automatically subject an individual to liability even though the entry causes harm to the possessor." (Citation and punctuation omitted.) *Bullard v. Bouler*, 272 Ga. App. 397, 399 (2) (612 SE2d 513) (2005). The church requested a charge on the defense. But the innocent trespasser defense "protects individuals who enter the land of another under the mistaken belief that it is permissible to do so." Id. See also *C. W. Matthews Contracting Co. v. Wells*, 147 Ga. App. 457, 458-459 (2) (249 SE2d 281) (1978) (contractor thought it was adhering to Department of Transportation right-of-way plans when it built road on plaintiff's property). Here, there is no evidence that the church thought it had the right to let excessive water run onto Bailey's property. The trial court properly denied the motion for directed verdict and did not abuse its discretion regarding the jury charge.

7. ARBC contends it should have received a JNOV because there was an absence of evidence of negligence or proximate cause linking it to Bailey's injuries. But the evidence showed that excess rainwater flowed from the church property onto Bailey's property in a continuing manner.

> As to surface water, one land proprietor has no right to concentrate and collect it, and thus cause it to be discharged upon the land of a lower proprietor in greater quantities at a particular locality, or in a manner different from that in which the water would be received by the lower estate if it simply ran down upon it from the upper by the law of gravitation. [Cits.]

*Cox v. Martin*, 207 Ga. 442 (1) (62 SE2d 164) (1950). *Menzies v. Hall*, 281 Ga. 223, 225 (1) (637 SE2d 415) (2006). Some evidence, as well as a professional opinion, was introduced to show that the initial leak on the church property caused underground voids on church and County property that continue to divert water onto the plaintiff's property, as well as evidence that the church and County failed to remedy the problem in order to stop the excess flow after being told about the problem.

Even though the church may not have caused the initial leak, may not have owned the water that leaked, or may not have had any responsibility for the compaction of the soil around the underground utility lines, evidence was presented and the jury found that the

initial leak caused a condition on its property in 2004 that in turn caused continued excessive flooding of Bailey's property thereafter. "A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." OCGA § 41-1-1. And under Georgia law, liability for a nuisance arises out of responsibility for the continuance or maintenance of a nuisance in addition to the creation of one; and it is control, not ownership, of the relevant property that is at issue:

> [I]n order to be held liable for nuisance, ownership of land by the tortfeasor is not an element, but control is; the essential element of nuisance is control over the cause of the harm. The tortfeasor must be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance.

(Citation and punctuation omitted.) *Sumitomo Corp. of America v. Deal*, 256 Ga. App. 703, 707 (2) (569 SE2d 608) (2002). Finally, each continuance of a nuisance gives rise to a claim:

> Where a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie. (Citations omitted.) *City Council of Augusta v. Lombard*, 101 Ga. 724, 727 (28 SE 994) (1897).

*City of Atlanta v. Kleber*, 285 Ga. 413, 416 (1) (677 SE2d 134) (2009). The issues raised were properly for the jury, and the trial court did not err by denying the motion for JNOV on this ground.

8. ARBC contends it was entitled to a JNOV because OCGA § 41-1-5 (b) required Bailey to give it notice to abate the nuisance, and it never received such notice from Bailey. We find this contention to be without merit based on the plain language of the Code section. It applies only in cases where "the alienee of the property injured" makes a claim against the "alienee of the property causing the nuisance." Id. At a minimum, Bailey does not fall into the former category.

9. In its fourth and fifth enumerations of error, ARBC contends it was entitled to a JNOV because any water that initially leaked from the sprinkler vault was the legal responsibility of the County because it owned the water and the utility easements. But this enumeration ignores the law of continuing nuisance as explained in Division 7.

10. ARBC contends it should have received a JNOV because the jury initially found Bailey 50 percent responsible and, under OCGA § 51-12-33 (g), she is not entitled to recover. ARBC did not move for a directed verdict on this ground, and therefore the matter could not be raised in a motion for JNOV and cannot be raised on appeal. OCGA § 9-11-50 (b); *Glenridge Unit Owners Assn. v. Felton*, 183 Ga. App. 858 (2) (360 SE2d 418) (1987); *Fidelity &c. Ins. Co. v. Massey*, 162 Ga. App. 249, 250 (1) (291 SE2d 97) (1982). In addition, this enumeration is controlled adversely to ARBC by Division 2.

11. ARBC contends it should have received a JNOV because it is protected by charitable immunity. This issue was not raised in ARBC's motion for directed verdict and is therefore not properly before us.

12. ARBC contends the trial court erred by allowing Bailey's expert witness, Ed Haight, to testify over its objection and by denying its motion in limine on that point. "Whether 'a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion.' (Citation and punctuation omitted.) *Moran v. Kia Motors America*, 276 Ga. App. 96, 97 (1) (622 SE2d 439) (2005)." *Mason v. Home Depot U.S.A.*, 283 Ga. 271, 279 (5) (658 SE2d 603) (2008). We find none here.

Prior to trial, the court held a *Daubert* hearing and accepted Haight as an expert witness in the field of engineering. In four pages of a broader order, the court concluded that Bailey had met the requirements of OCGA § 24-9-67.1, which, since February 16, 2005, governs the admission of expert testimony "in all civil actions." The court addressed four questions raised by that Code section: (1) whether the witness's testimony is based on sufficient facts and data; (2) whether his testimony is the product of reliable principles and methods; (3) whether he applied principles and methods reliable to the facts of the case; and (4) whether his testimony should be excluded because its prejudicial effect will outweigh its probative value. See OCGA § 24-9-67.1 (a), (b).

We first observe that the science underlying this case is not that complicated, and not much expert opinion was required because most of the questions were not "shrouded in the mystery of professional skill or knowledge," which is required in order to admit expert testimony. Expert opinion testimony is allowed where

> the nature of the question is such that the factors leading to a conclusion are not known to the common or average [person], but are among those things shrouded in the mystery of professional skill or knowledge.

(Citation and punctuation omitted.) *Fordham v. State*, 254 Ga. 59-60 (4) (325 SE2d 755) (1985). John Goga, who found the original leak, personally observed chlorinated water bubbling up on Bailey's property, chlorinated water flooding a gas vault on the other side of Spain Road, and chlorinated water gushing out of a leak in the sprinkler vault uphill and 300 feet away from Bailey's property at a time when it had not rained and the surface of the roads and the church's stormwater retention pond were dry. He also observed water improperly flowing on the outside of a pipe into a manhole. These factual findings alone in large part justify Haight's ultimate conclusion that rainwater was capable of flowing downhill, underground, and under Spain Road onto Bailey's property in the same manner. In fact, Goga even testified, without objection, that "the water was coming from this vault making underground aquifers and leading into [Bailey's] property." We also accept as common knowledge that rainwater soaks into the earth and that water can erode soil. See generally *McGraw v. State*, 85 Ga. App. 857, 861 (70 SE2d 141) (1952) (this court will take notice that it is common knowledge that an automobile is heavy and can crush people). To the extent expert testimony was required, it was needed only on the question of whether it was more likely than not that the original leak could create or exacerbate underground voids and whether rainwater could subsequently flow through the same channels that the chlorinated water went from the church's property to Bailey's property. It is in this context that we assess whether the trial court abused its discretion by allowing Haight to testify.

On the first part of the test under OCGA § 24-9-67.1, the evidence showed that Haight relied on sufficient facts and data. He personally inspected the property and surrounding properties, reviewed relevant documents and videotapes, analyzed the topography including the slope and direction of underground utility lines, conducted multiple tests on the property including ground penetrating radar, and relied on the law of gravity, all in order to form his opinion.

ARBC contends Haight did not employ or apply reliable principles or methods as required by the second and third part of the test. See OCGA § 24-9-67.1 (b) (2), (3). Haight was a civil engineer with a doctorate in engineering science and mechanics who has consulted and testified as an expert in numerous water intrusion/infiltration and related cases. He had a background in site development work including installation of sewers, waterlines and other utilities. The trial court relied on evidence showing that Haight is trained in hydrology and engineering, that his opinion was based in part on the simple principle of gravity, and that he used ground penetrating radar ("GPR") and verified the results by probing the areas with a

steel rod which confirmed the findings.

ARBC argues that Haight did not follow a scientific method for finding that rainwater ran through these same voids because he did not do some experiments to validate his hypothesis and repeat the experiments to confirm the results. And Haight deposed that his opinion was a theory that is impossible to prove because he could not repeat the initial water leak. But Haight had factual information showing that Bailey had not had an excessive rainwater problem before the sprinkler vault leak and that chlorinated water flowed to Bailey's property in large volumes and might have done so for months. He had factual information that Bailey experienced excessive flooding during rains thereafter. He had seen video of water flowing into a manhole outside of a pipe. He had knowledge and experience that water travels in places where the soil is not as densely compacted as other areas, and that water will commonly track along utility lines. Next, although Haight was not personally qualified to use GPR, he tested the results produced by the GPR by probing the ground with a four-foot rod, which, he asserted, every engineer in the business probably has. Finally, although Haight admitted not being able to testify about the cause of the voids to a scientific degree of certainty, he considered and eliminated all other reasonable possibilities, and he testified that in his opinion it was "most likely" and that "it was more likely than not" that the original catastrophic leak caused some of the voids through which rainwater subsequently ran. Finally, some speculation or conjecture is allowed:

> [T]he appropriate standard for assessing the admissibility of the opinion of [Bailey's] expert is not whether it is speculative or conjectural to some degree, but whether it is wholly so. An expert is not required to prove within a reasonable degree of scientific certainty his opinion of how an [incident] occurred.

(Citations and punctuation omitted.) *Layfield v. Dept. of Transp.*, 280 Ga. 848, 850 (1) (632 SE2d 135) (2006). We find no manifest abuse of discretion on this point. Finally, ARBC does not argue that the testimony was more prejudicial than probative, and we do not find that the trial court abused its discretion on this point, either.

13. ARBC contends it was entitled to a DV or JNOV because Bailey's damages did not result from a "positive and continuous tort." But ARBC did not raise this error in its motion for DV, and accordingly, there is nothing to review on appeal.

14. ARBC contends the trial court erred by allowing the County to introduce the "2001 Water Metering Device Easement." The

692

church contends the document was irrelevant and inadmissible. Pretermitting the question of error, the church must also show harm, which it has not argued. "It is axiomatic that harm as well as error must be shown to authorize a reversal by this court." (Punctuation and footnote omitted.) *Albarran v. State*, 249 Ga. App. 331, 334 (4) (548 SE2d 440) (2001).

15. Finally, ARBC contends the trial court erred by denying its motion in limine to exclude evidence that Bailey's husband had been murdered 25 years earlier. But again, other than saying that the evidence evoked sympathy, ARBC has not shown harm. We find no reversible error.

In conclusion, we reverse the trial court's judgment with direction to enter judgment on the second verdict. And all other claims of error in Case Nos. A09A1186, A09A1231 and A09A1717 are without merit.

*Judgments reversed and cases remanded with direction. Blackburn, P. J., concurs. Doyle, J., concurs in Divisions 1 and 3 through 15 and concurs in judgment only in Division 2.*

### ON MOTION FOR RECONSIDERATION.

ARBC argues it did not cause the initial leak and it had no responsibility for the voids or cavities created by the initial leak; therefore it cannot be liable even for the continued flooding each time it rained. ARBC claims the undisputed evidence shows that (1) the voids or cavities occurred only on the County's easement associated with the fire-suppression system or on the County's right-of-way adjacent to Annistown Road; (2) Bailey's expert testified that the voids all resulted from poorly compacted soil around the County's underground utility lines, including the fire-suppression water pipes and other lines; (3) the County was responsible for all of the soil compaction around the utility lines on the easement and the right-of-way; and (4) the church had no authority over the easement or right-of-way. ARBC then cites a case for the proposition that the County alone is responsible for flooding damages flowing from its use of an easement.

But ARBC overlooks at least two points. First, the "Water Metering Device" easement that relates to the fire-suppression vault and pipeline provides that ARBC gives to the county only "an easement for the purpose of inspecting and maintaining water metering devices located within the said easement." It leaves the remaining rights and responsibilities with the church, including maintenance:

> The maintenance of piping, backflow preventers, vaults and
> all other appurtenances located within the above described

easement, with the exception of the metering devices shall be the sole responsibility of [ARBC].

Thus, the County did not have sole dominion and control of the vault or the easement leading from the vault to the County right-of-way along Annistown Road. The church retained responsibility for maintenance, including the backflow preventer where the initial leak occurred. These facts also distinguish the case law cited by ARBC.

Second, Bailey's expert testified that water leaked out of the vault in all four directions. Two large voids were found on ARBC property adjacent to the sprinkler/fire-suppression vault, one of which is on the church side of the vault. Haight testified that there had to be underground voids leading from the sprinkler vault to the gas vaults located along Spain Road, a path not completely on the easement or right-of-way. And the parties all used a model of the properties when describing the location and path of the water, and that model is not in the record. Also the jury visited the properties during the trial to make their own observations. Thus, ARBC's argument that there was no evidence to support the jury's verdict is without merit.

Finally, the above and other facts support the trial court's decision to not charge the jury on the defense of innocent trespasser. First, "a continuing trespass and a continuing nuisance are one and the same thing in a surface-water invasion case." *Brand v. Montega Corp.*, 233 Ga. 32, 33 (2) (209 SE2d 581) (1974). Here, the continuing nuisance/trespass occurred after ARBC was on notice of the initial flooding and aware of the continued flooding. Despite knowledge of the continued flooding, it failed to act in response to Bailey's complaints about the continued flooding except to take some pictures.

*Motion for reconsideration denied.*

DECIDED DECEMBER 1, 2009 —
RECONSIDERATION DENIED DECEMBER 16, 2009 —

*Robert W. Hughes, Jr., William E. Fields*, for Bailey.

*Drew, Eckl & Farnham, W. Wray Eckl, Brandon M. Rhodes*, for Annistown Road Baptist Church, Inc.

*Michael P. Ludwiczak, Karen G. Thomas*, for Gwinnett County.