**FIFTH DIVISION
MCFADDEN, C. J.,
MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 13, 2020**

# In the Court of Appeals of Georgia

A19A1726. CARLY RAY INDUSTRIES, INC. et al. v. MAYS.

MCFADDEN, Chief Judge.

Keenan Mays sued his former employer, Carly Ray Industries, Inc., and that company's owner, Jamark Deray Goodwin, for malicious prosecution, false imprisonment, and intentional infliction of emotional distress, among other claims. He alleged that Goodwin deliberately attempted to frame him for crimes that he did not commit. During a jury trial, Carly Ray and Goodwin unsuccessfully sought a directed verdict on the claims for malicious prosecution, false imprisonment, and intentional infliction of emotional distress. The jury ultimately returned a verdict in favor of Mays, and on appeal Carly Ray and Goodwin argue that the trial court erred by denying their motion for judgment notwithstanding the verdict. As to the malicious prosecution and false imprisonment claims, trial evidence demonstrated the elements

that Carly Ray and Goodwin challenged in their directed verdict motion. As to the intentional infliction of emotional distress claim, Carly Ray and Goodwin make no argument on appeal in support of the challenge that they made in their directed verdict motion. So we affirm.

1. *Standard of review, facts, and procedural history.*

We review the trial court's denial of the motion for judgment notwithstanding the verdict to determine if there is any evidence to support the jury's verdict, construing the evidence in the light most favorable to Mays. See *Patterson-Fowlkes v. Chancey*, 291 Ga. 601, 602 (732 SE2d 252) (2012). Because the motion for judgment notwithstanding the verdict was essentially a renewal of the earlier motion for directed verdict, we may consider only the grounds raised in the motion for directed verdict. See *McClattie v. Kowal*, 331 Ga. App. 285, 286 (2) (769 SE2d 187) (2015); *Bailey v. Annistown Road Baptist Church*, 301 Ga. App. 677, 689 (10) (689 SE2d 62) (2009).

Viewed most favorably to Mays, the trial evidence showed that during the period in which Mays worked for Carly Ray, he and Goodwin had a contentious relationship. Goodwin displayed jealously toward Mays, both professionally and personally, and assigned Mays less desirable work.

2

Goodwin fired Mays after Mays missed work for a dental procedure. When Mays asked Goodwin about his final paycheck, Goodwin told Mays to meet him at the office on a particular date. But when Mays arrived at the office on that day, neither Goodwin nor the paycheck was there.

Around this time, several of Mays's former coworkers were on an out-of-town trip for work. When they returned, Goodwin told them that the office and Goodwin's car had been vandalized. He accused Mays of committing those crimes and stated his intent to call the police. But Goodwin also asked one of Mays's former coworkers, who had been out of town on the day in question, to lie and say that she had witnessed Mays committing the crimes. Goodwin "asked [her] to set up Keenan [Mays]." She refused. She also questioned Goodwin's claim that Mays had damaged computer keyboards by pouring a substance on them, because she saw no evidence of that damage and found the keyboards to be usable. And she questioned Goodwin's suggestion that there might be security recordings of the crimes, because she knew of no security cameras at the office.

One to two weeks after the crimes allegedly occurred, Mays learned that a warrant for his arrest had been issued. He went to jail on that warrant and had to post

bond. The state later indicted Mays[1] but ultimately filed a nolle prosequi because the state's primary witness refused to cooperate. The trial evidence did not specifically identify that primary witness, but Mays testified that he believed the witness was Goodwin's girlfriend, who was another of Mays's former coworkers and who had also been out of town on the day Mays allegedly committed the crimes.

Mays denied committing the alleged crimes and testified at trial that he believed he had been "set up."

At trial, Carly Ray and Goodwin moved for a directed verdict. They argued that they were entitled to a directed verdict on the malicious prosecution and false imprisonment claims because there was no evidence that Goodwin had instigated the prosecution of Mays without probable cause or with malice. They argued that they were entitled to a directed verdict on the intentional infliction of emotional distress claim because there was no evidence of the specific amount of Mays's damages caused by the alleged intentional infliction of emotional distress. The trial court denied their motion for directed verdict on these claims, and the jury returned a verdict in favor of Mays. Carly Ray and Goodwin orally moved for judgment

---

[1] The indictment is not a part of the trial evidence, and no evidence was presented at trial of the precise offenses with which Mays was charged, although in his complaint he alleged that he was charged with burglary.

4

notwithstanding the verdict, but the trial court entered judgment on the verdict, effectively denying their motion.

2. *Malicious prosecution.*

Carly Ray and Goodwin argue that the trial court should have granted them a judgment notwithstanding the jury's verdict for Mays on his claim for malicious prosecution. Georgia law affords a cause of action to a person who has been damaged by a "criminal prosecution which is carried on maliciously and without any probable cause[.]" OCGA § 51-7-40. A person seeking to recover for malicious prosecution must show, among other things, that the prosecution was instigated without probable cause and with malice. *Wal-Mart Stores v. Blackford*, 264 Ga. 612, 613 (449 SE2d 293) (1994). We are not persuaded by Carly Ray and Goodwin's challenge to the evidence on these elements.

(a) *Evidence that Goodwin instigated prosecution.*

Carly Ray and Goodwin argue that there was no evidence that Goodwin "initiated, encouraged, or took action to further the prosecution of . . . Mays[,]" including no evidence that Goodwin called the police. In malicious prosecution cases,

> [t]he law draws a fine line of demarcation between cases where a party directly or indirectly urges a law enforcement official to begin criminal

5

proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute. In the former case there is potential liability; in the latter case there is not. It is clear, though, that initiation of the criminal action need not be expressly directed by the party to be held liable. . . . [Moreover, a] person may be liable where he gave information to the investigating officer which he knew to be false and so unduly influenced the authorities.

*Wolf Camera v. Royter*, 253 Ga. App. 254, 257-258 (1) (a) (558 SE2d 797) (2002) (citation omitted).

No evidence was presented at trial to show how any law enforcement investigation began, the nature or scope of that investigation, or the role of law enforcement in obtaining the warrant for Mays's arrest. Nevertheless, the evidence described above permitted a finding that Goodwin provided the police with false information about Mays. There was evidence that, a week or two before the arrest warrant was issued, Goodwin accused Mays of crimes and stated that he intended to call the police. There was evidence that Goodwin attempted to get one of his employees to fabricate evidence in an effort to "set up" Mays. There was evidence that the state's primary witness, who later refused to cooperate with the prosecution, had an intimate relationship with Goodwin and was not in town at the time Goodwin

6

alleged the crimes occurred. And there was evidence that at least one of the crimes alleged by Goodwin did not occur (the damage to the computer keyboards).

(b) *Evidence of want of probable cause.*

Carly Ray and Goodwin argue that there is no evidence supporting a finding that Goodwin instigated a prosecution without probable cause. "Lack of probable cause shall be a question for jury, under direction of the court." OCGA § 51-7-43. In other words, the jury determines the existence of the facts that are alleged to have established probable cause, while the question of whether those facts established probable cause is a question of law. See *Wilson v. Wheeler's, Inc.*, 190 Ga. App. 250, 252 (1) (378 SE2d 498) (1989). Carly Ray and Goodwin point to an affidavit by Goodwin, arguing that it established probable cause and that Mays failed to contest its contents. But this affidavit was not introduced into evidence at trial and so was not a part of the evidence that we consider in reviewing the trial court's ruling on the motion for judgment notwithstanding the verdict. See *Jones v. Sperau*, 275 Ga. 213, 214 (1) (563 SE2d 863) (2002) (trial court did not err in denying party's motion for judgment notwithstanding the verdict where evidence *at trial* did not demand verdict in his favor). Cf. *Norfolk Southern R. Co. v. Everett*, 322 Ga. App. 867, 868 (1) (747 SE2d 92) (2013) (same in context of directed verdict motion).

7

Carly Ray and Goodwin also argue that Mays's indictment was prima facie evidence of probable cause. But the indictment was not conclusive evidence of probable cause, see *Rowe v. CSX Transp.*, 219 Ga. App. 380, 381 (465 SE2d 476) (1995), and other trial evidence, recounted above in Division 2 (a), rebutted the indictment evidence.

In the face of this evidence, we find no merit whatsoever in Carly Ray and Goodwin's assertion that evidence of probable cause was uncontested. As discussed above, the trial evidence, although circumstantial, supported a finding that Goodwin pursued a prosecution of Mays knowing that Mays had not committed the alleged crimes. If a defendant knows that a plaintiff committed no crime, then "any argument that probable cause existed for [the plaintiff's] arrest is wholly without merit." *Turnage v. Kasper*, 307 Ga. App. 172, 182 (1) (b) (ii) (704 SE2d 842) (2010).

(c) *Evidence of malice.*

Finally, from the evidence that Goodwin disliked Mays a jury could find that Goodwin's actions against him were motivated by personal spite. This was sufficient to find malice. See *McKissick v. S. O. A., Inc.*, 299 Ga. App. 772, 777 (2) (684 SE2d 24) (2009) (malice may be shown by personal spite, among other ways).

3. *False imprisonment.*

In their motion for directed verdict, Carly Ray and Goodwin made the same arguments for a judgment on the false imprisonment claim as on the malicious prosecution claim — a failure of evidence regarding the lack of probable cause and the existence of malice. So these are the only two issues we consider in reviewing the trial court's denial of a judgment notwithstanding the verdict on the false imprisonment claim. See *McClattie*, 331 Ga. App. at 286 (2); *Bailey*, 301 Ga. App. at 689 (10). These arguments fail for the reasons discussed above in Division 2.

4. *Intentional infliction of emotional distress.*

In their motion for directed verdict as to the claim of intentional infliction of emotional distress, Carly Ray and Goodwin argued only that there was no evidence of the specific monetary amount of damages that Mays suffered as a result of this alleged tort. So as to this claim, the lack of evidence of the amount of damages is the only ground upon which we may consider their assertion that they were entitled to judgment notwithstanding the verdict. See *McClattie*, 331 Ga. App. at 286 (2); *Bailey*, 301 Ga. App. at 689 (10). But Carly Ray and Goodwin do not assert or support this ground in their appellate brief. Instead, they argue that there was no evidence of other elements of the intentional infliction of emotional distress claim. Because they did not make these arguments in support of their directed verdict motion, we cannot consider

9

them. See *Bailey*, supra. So Carly Ray and Goodwin have not shown any basis for reversal as to this claim.

*Judgment affirmed. McMillian, P.J., and Senior Appellate Judge Herbert E. Phipps concur*.